# CASES DETERMINED

AT THE

## August Term, 1883.

---

POTTER vs. TAGGART.

59
117    4 66
1

*September 4 — December 11, 1883.*

*(1) Sale of note may be rescinded for fraudulent release of part of security, though remainder is ample. (2) What must be restored on rescission. (3) Sale to third person and repurchase do not affect right to rescind. (4) Measure of damages.*

1. Defendant sold to plaintiff a note secured by a mortgage purporting to cover sixty-eight acres of land, but which had, in fact, been released as to twenty-two acres thereof. The land was situated in another county, and there was no convenient opportunity to examine the records. Defendant knew that the plaintiff supposed he was getting a mortgage interest in the whole sixty-eight acres, but kept silent as to the release. *Held*, that the concealment of the release was a fraud, and that the plaintiff might rescind the sale and recover the consideration paid for the note and mortgage, without showing that the land not released was an inadequate security for the debt. [CASSODAY, J., is of the opinion that, if the security remained ample, so that there could be no possibility of loss, the plaintiff obtained all that he contracted for, and could not rescind.]

2. It was not necessary, in such case, to entitle the plaintiff to rescind, that, when he offered to return the securities, he should have offered also to pay to the defendant the interest which he had collected thereon.

3. The fact that the plaintiff had assigned the securities to a third person before discovering that a part of the land had been released, and, upon discovery of that fact, had taken them back or repurchased them for a sum less than had been paid to him therefor,

VOL. LIX — 1

did not affect his right to rescind the sale by the defendant to him.

4. The measure of damages in such a case is the amount paid for the securities, with interest, less the amount of interest collected, to be deducted as of the days when it was paid. ·

APPEAL from the Circuit Court for *Fond du Lac* County.

This action was brought to recover the consideration paid by plaintiff for a certain note and mortgage which he had theretofore purchased of the defendant. It came to this court on an appeal from a judgment for the defendant, entered pursuant to a ruling of the circuit court sustaining a demurrer *ore tenus* to the complaint. It was held on that appeal that the complaint states a cause of action, and the judgment was reversed. 54 Wis., 395. The pleadings are fully stated in the report on that appeal, and it is unnecessary to repeat the statement here. The cause has since been tried, and the jury returned a special verdict in the form of questions and answers, as follows:

" 1. Did the defendant, at the time he sold the note and mortgage described in the complaint, fraudulently conceal from the plaintiff the fact that twenty-two acres of land had been released from the operation of said mortgage? *Answer.* Yes.

" 2. If you answer the last question in the affirmative, was the plaintiff deceived and misled by such concealment, and thereby induced to purchase said note and mortgage? *A.* Yes.

" 3. Did the plaintiff, when he was the owner of the note and mortgage, and before the commencement of this action, offer to return said note and mortgage to the defendant? *A.* Yes.

" 4. In case you answer yes to the last question, then when such offer to return said note and mortgage was made by the plaintiff, did the defendant refuse to do anything about the matter? *A.* Yes.

" 5. If you answer yes to the third question, then state the date when such offer to return was made. _A._ About the 20th day of September, 1879.

" 6. Did the plaintiff, in February or March, 1879, ascertain and know that twenty-two acres of the mortgaged premises had been released from the operation of the mortgage described in the complaint? _A._ No."

Thereupon each party moved, on the records, files, evidence, and verdict, for judgment against the other party. The motion of the defendant was granted, and judgment was entered against the plaintiff, dismissing his complaint on the merits, with costs. The testimony is stated in the opinion. The plaintiff appeals from the judgment.

For the appellant there was a brief signed by _W. W. D. Turner_, with _Geo. Sutherland_, of counsel, and oral argument by _Mr. Sutherland_.

_Charles W. Felker_, for the respondent, contended, _inter alia_, that it did not appear that the plaintiff was in any way damaged by fraudulent concealment of fact, and that therefore he was not entitled to judgment. _Castleman v. Griffin_, 13 Wis., 535; _Barber v. Kilbourn_, 16 id., 485; _Foster v. Taggart_, 54 id., 394; _Nye v. Merrian_, 35 Vt., 438; _Otis v. Raymond,_ 3 Conn., 413; _Board of Commissioners v. Younger_, 29 Cal., 172; _Morrison v. Lods_, 39 id., 381; _Purdy v. Bullard_, 41 id., 444; _Smith v. Brittenham_, 98 Ill., 188. With slight diligence the plaintiff could have ascertained the fact of the release. Mere passive silence of the defendant, in such a case, does not amount to fraudulent concealment. _Goninan v. Stephenson_, 24 Wis., 75; _Hadley v. Clinton Co. Imp. Co._, 13 Ohio St., 502; _Fisher v. Budlong_, 10 R. I., 525; _Laidlaw v. Organ_, 2 Wheat., 178; _Kintzing v. McElrath_, 5 Pa. St., 467; _Mitchell v. McDougall_, 62 Ill., 498; Bigelow on Fraud, 31; Moak's Underhill on Torts, 560, 561. If a party seeks to rescind a contract on the ground of fraud and to recover back what he has paid, he must rescind _in toto_.

If he has received anything under the contract either in money or property, he must restore it. Cooley on Torts, 504; *Weed v. Page*, 7 Wis., 512; *Hendricks v. Goodrich*, 15 id., 679; *Grant v. Law*, 29 id., 99; *Van Trott v. Wiese*, 36 id., 448; *Hyslip v. French*, 52 id., 517; *Hanna v. Shields*, 34 Ind., 87; *Masson v. Bovet*, 1 Denio, 74; *Jewett v. Petit*, 4 Mich., 508; *Wilbur v. Flood*, 16 id., 45; *Bucheneau v. Horney*, 12 Ill., 336; *Jennings v. Gage*, 13 id., 612; *Herman v. Haffenegger*, 54 Cal., 161; *Hunt v. Silk*, 5 East, 449; *Sanborn v. Batchelder*, 51 N. H., 434; *Byard v. Holmes*, 34 N. J. Law, 296; *Cushing v. Wyman*, 38 Me., 589.

The following opinion was filed September 25, 1883:

Lyon, J. The mortgaged premises consist of sixty-eight and one tenth acres of marsh land in the county of Winnebago. The same land was conveyed by the defendant to J. W. Sanders, the mortgagor, by a deed bearing even date with the mortgage, and probably the mortgage was given for some part or the whole of the purchase money. The date of these instruments is May 22, 1873. June 4th in the same year Sanders conveyed about twenty-two acres of the mortgaged land to Jackson for $125.55. Jackson gave his note for that amount, which was delivered to the defendant, who indorsed it on the note of Sanders under date of June 9, 1873, on which day the defendant executed a release of the twenty-two acres from the lien of the mortgage, and the same was recorded in the proper register's office immediately thereafter. The contract for the purchase and sale of the note and mortgage was made in Ripon, Fond du Lac county, where both parties resided. The consideration paid by plaintiff for the securities was a little more than $400. The purchase was made in April, 1877. The plaintiff collected two years' interest on Sanders' note, and in the spring of 1879 sold the securities to one Keenan for about $400. Keenan having learned that the

Potter vs. Taggart.

twenty-two acres had been released, applied to the plaintiff in the fall of that year to take back the note and the mortgage. The plaintiff thereupon took them back or repurchased them, Keenan making a discount of about $25 from the sum he paid for them. The facts above stated are not controverted. Other testimony in the case (although disputed) tends to prove that the defendant never informed plaintiff of the release, and the latter had no knowledge of its existence until the fall of 1879; and that in the negotiations for the purchase of the note and mortgage defendant told plaintiff that the land was good for $700, and would sell for that at any time, also that Sanders was as good as one Almon Osborne for all he promised to pay. The plaintiff testified in substance that he made the purchase on the faith of those representations.

The testimony further tends to prove that in September, 1879, and after he had repurchased the securities of Keenan, he took them to the defendant and requested him to take them back and give him something else for them, which the defendant did not do, but refused to do anything. Also that Keenan and plaintiff together made a similar request of the defendant a few days earlier, and before such repurchase, with the same result; and that the defendant's attention was then called to the fact, as the basis of such request, that he had released the twenty-two acres. The only testimony tending to show that the plaintiff was informed of the release at any time after he had purchased the note and mortgage until Keenan gave him the information in the fall of 1879, is that of Sanders, who testified that he so informed the plaintiff early in that year. This the plaintiff, in his testimony, denied.

Aside from the finding of fraud (which will presently be considered), we think the facts proved, and which the testimony tended to prove, as above stated, are sufficient to sustain the special findings of the jury.

The facts established by the verdict and undisputed evidence, and which are, therefore, verities in the case, are these: The defendant, when he sold and transferred the note and mortgage to the plaintiff, concealed from the plaintiff that he had released twenty-two acres of the mortgaged land from the lien of the mortgage, and the plaintiff was deceived and misled by such concealment, and was thereby induced to make the purchase. In September, 1879, the plaintiff, when he was the owner thereof, offered to return the note and mortgage to the defendant, because of such release, but the latter refused to accept a return thereof, or to do anything about the matter. The testimony of Sanders as to the information he gave the plaintiff of the existence of the release is not true, and hence the plaintiff had no notice of the release until he was informed of it by Keenan in the fall of 1879.

Does the testimony support the finding of the jury that the concealment by the defendant of the release was fraudulent? The transaction between the parties was had out of the county in which the mortgaged land is situated. There was no convenient opportunity to examine the records in the proper register's office, and there was nothing on the face of the papers to raise even a suspicion that the mortgage was not a lien upon the whole of the sixty-eight-acre lot described in it. The plaintiff had the right to believe that it covered the whole lot. He was solicitous about the security he was getting, as will appear by the following quotation from his testimony: " *Mr. Taggart* and Mr. Hall came to my house. They presented the note and papers for me to see. There was some informality about the note, and caused some talk. I told *Mr. Taggart* if it was a straight number one concern I would purchase it, but I did not want to purchase anything that was not. He said Mr. Sanders was as good as Almon Osborne for all he would promise for. He said the land was good for $700, and would sell for that any

day. With his recommendation I concluded to buy it, but I said, before I came to that conclusion, if it was good for the $500, it ought to be good with the $125 paid on it, and concluded to take it. . . . I took the note and mortgage with their recommendation,— with his recommendation." If to sustain the verdict it is essential that this testimony be true, it will be presumed that the jury believed it to be true. These circumstances were sufficient to apprise the defendant that the plaintiff supposed he was buying a mortgage security covering sixty-eight acres of land. Instead of informing him that it only covered about forty-six acres, as good faith required the defendant to do, he transferred to the plaintiff, in form, a mortgage apparently covering the whole lot, leaving the latter to find out in some other manner that nearly one third of the apparent security had long before been destroyed by the defendant. A concealment under such circumstances, as ground for rescinding the contract, is equivalent to a representation that the mortgage was actually a lien upon the sixty-eight acres.

If one sells two horses as his own, knowing that he owns but one of them and has no right to sell the other, and knowing, also, that the buyer believes he owns both, he commits a fraud on the buyer, who gets title to but one horse under the purchase, even though he made no express representation that he owned both horses. Dealing with the property as his own is equivalent to a representation of ownership. The same principle applies here. The defendant sold and assumed to transfer to the plaintiff a mortgage security on sixty-eight acres of land. He owned such security on but forty-six acres, and could transfer only that. He knew the plaintiff supposed he was getting a mortgage interest in the whole sixty-eight acres; yet he kept silent. It was his duty to speak, and the concealment of the existence of the release was a fraud upon the plaintiff.

Our conclusion is that all of the special findings are sup-

ported by the testimony, and hence that none of them should be disturbed.

The next question is, Was the defendant entitled to judgment on the verdict and undisputed evidence in the case? It was insisted by the learned counsel for the defendant, in his argument, that the plaintiff had no right to rescind the contract of purchase of the securities, and hence could not maintain an action against the defendant to recover the consideration paid therefor, unless he showed that he suffered damage by reason of the defendant's fraudulent concealment of the release; and further, that such damage could only be shown by proof that the forty-six acres not released is an inadequate security for the mortgage debt. Counsel assumed that no such proof was given or offered.

A contract may be rescinded on account of fraud, or because there is a complete difference in substance between the thing bargained for and that obtained under the contract. 2 Chitty on Con., 1089. Here the plaintiff rescinded the contract on account of fraud. It may be conceded that the false and fraudulent representation or concealment must be of a material fact on which the party relied and had a right to rely, to authorize a rescission of the contract. 6 Wait's Pr., 179, and cases cited. Were this a purchase of sixty-eight acres of land instead of a mortgage upon the same land, and had the defendant produced a patent from the United States to himself for sixty-eight acres (upon the faith of which the plaintiff purchased), concealing the fact, of which he knew the plaintiff was ignorant, that he had conveyed to another twenty-two acres of the land, the deed of which had been duly recorded, no one will question that this would be not only a fraud, but a fraud in respect to a material fact, and that the purchaser might rescind by an offer to reconvey, and thereupon recover back the consideration paid. What possible difference can it make in the application of the principle that the purchase was of a mort-

gage interest in the land instead of the fee? It is no answer to say that if the mortgage debtor is solvent, or if the forty-six acres is adequate security for the mortgage debt, the plaintiff is not injured, and therefore cannot rescind the contract of purchase. A man is entitled to have what he contracts for. If he fails in any material particular, through the fraud of the other contracting party, to get what he bargained for, he may rescind the contract and recover back what he has paid on it. The failure of the plaintiff to obtain by his purchase a mortgage interest in the twenty-two acres released, to which he was entitled under his contract, is material. He did not alone contract with reference to the pecuniary responsibility of Sanders, or with reference to the value of forty-six acres of the land mortgaged. He purchased the note of Sanders, and a mortgage interest coextensive with the note in the whole sixty-eight acres. This he was entitled to have, and he was induced to make the purchase by the fact that he believed he was getting all that he bought. It is a fair deduction from the verdict that he would not have made the purchase had he known of the release. He was kept in ignorance of the release by the fraud of the defendant. To deny the right of rescission in such a case would be to hold the plaintiff to a position into which he was drawn by the fraud of the defendant, and to force him to accept as a satisfaction of the defendant's obligation under the contract which the parties made, a consideration which he never agreed to accept, and which he would not have accepted had it been proposed to him.

The right of rescission in such a case seems so plain, and so well grounded in principle, that we cannot hold against it but upon the most satisfactory authority. We have been referred to no case which denies that right merely because the subject of the purchase was a mortgage interest instead of the fee, and a very diligent search has failed to disclose such a case. In an action by mortgagee against mortgagor,

to enjoin the latter from committing waste on the mortgaged premises, the question of adequacy of security is involved, but even in that case the question of the solvency or insolvency of the mortgage debtor is not material. *Fairbank v. Cudworth*, 33 Wis., 358. Cases of that kind rest upon entirely different grounds. In those cases all that the court assumes to do is to protect the security; in cases like this it holds the parties to the contract which they make, and protects an injured party from the fraud of the other.

 But assuming that the plaintiff had no right to rescind if the forty-six acres was adequate security for the mortgage debt, and that the burden was upon him to show the security inadequate, it by no means follows that the defendant is entitled to judgment. It appears that the twenty-two acres released was sold to Jackson for $125. Defendant testified that "this $125 was for the purchase price of the land released." The price for which it sold is some evidence of its value. In the absence of any other evidence on the subject the price may fairly be considered the value of the land. The defendant was satisfied with the sale, else he would not have been likely to receive the proceeds of the sale and release the land sold from the lien of the mortgage. Moreover the sixty-eight acres was all marsh land. In the light of common observation and experience, it may well be presumed, in the absence of testimony to the contrary, that there is no material difference in the value of the land, acre by acre. There is no evidence to the contrary. True, the mortgagor, Sanders, testified that the land "is not all about the same quality." That is probably true of any tract of land of the same extent. But a difference in quality does not necessarily affect the value of different acres. Different qualities of land may have the same market values. In short, there is nothing in the testimony to overthrow the presumption that the value per acre of the land released, and of that not released, is about equal. There is no sug-

gestion of any improvements upon the land, or of the exist-
ence of any physical or other conditions which render one
portion of the tract more valuable per acre than another.

Taking the price of the twenty-two acres as the basis for
computing the value of the remainder of the land, we find
the value of the forty-six acres is about $260. Were it
worth twice that sum it would not be adequate security for
the mortgage debt. Were the question of adequate security
the controlling one in the case, we should be constrained to
hold that a *prima facie* case of inadequacy is made in the
proofs, thus casting upon the defendant the burden of show-
ing the security sufficient. This he has not attempted to do,
and it stands proved by the testimony, and the legal and
reasonable inferences from the facts proved, that the forty-
six acres was inadequate security for the mortgage debt.

It is to be observed further, that under the charge of the
court the jury must have so found.

In submitting to the jury the question of fraud, the learned
circuit judge instructed them as follows: "If the release of
this land was material to the contract of sale — if the release
lessens or materially affects *the value of the note and mort-
gage as security* — then the defendant was bound to disclose
the fact of the release to the plaintiff, and the failure to do
so would be a fraudulent concealment. But if the release
was not material to the contract, did not lessen or materially
affect *the value of the security* — then, although he may not
have communicated that fact to the plaintiff, he cannot be
charged with fraud in the concealment." Under this instruc-
tion the jury must have found that the release materially
lessened the value of the note, or they could not have found
the concealment fraudulent. This is substantially equivalent
to a finding that the forty-six acres was inadequate security
for the note, otherwise they could not well have found that
the value of the note was materially lessened by the release.

Counsel for defendant predicates an argument upon the

omission of the plaintiff to pay, or offer to pay, to the defendant, when he offered to return the securities, the $75 of interest which he collected while he held them. It is claimed that this omission is fatal to the plaintiff's right to rescind, and to sustain the position the familiar rule is invoked that a party electing to rescind must rescind *in toto*, and must place the other party as nearly as possible *in statu quo*. If he has received anything under the contract he must restore it, whether it be property or securities. Cooley on Torts, 504.

When the plaintiff received the securities there was due upon them less than $520. When he offered to return them there was due upon them, after deducting the $75 of interest he had collected, over $530. He therefore offered to return all that he had received from the defendant under the purchase. If the purchaser of a horse uses the animal a week, and then upon discovering some fraud in the sale seeks to rescind by offering to return the animal, it would be as reasonable to require him to tender compensation for such use, as to require the plaintiff to offer to pay over the $75 as a condition to his right to rescind. It will not be contended that any such tender is necessary in the case supposed. Moreover, it would be absurd to require the plaintiff to offer the interest money to the defendant, when, upon a rescission of the contract, the defendant would become liable to pay the plaintiff several hundred dollars. The whole matter can be adjusted in fixing the amount of the recovery.

We are further of the opinion that the right of the plaintiff to rescind is not affected by his transactions with Keenan, and that the defendant has no claim to be allowed the discount allowed by Keenan when he reassigned the securities to the plaintiff. The latter was legally bound to take back the securities, and the defendant has no interest in the agreement under which they were reassigned.

It follows from the foregoing views that judgment should

have been rendered for the plaintiff on the findings, instead of the defendant.

The measure of damages is the amount plaintiff paid defendant for the securities, and interest at seven per cent., less $75 to be deducted as of the dates the same was paid.

*By the Court.*— The judgment is reversed, and the cause remanded with directions to the circuit court to enter judgment for the plaintiff in accordance with this opinion.

CASSODAY, J. An action to rescind a sale and recover back the purchase price is equitable in its nature. Hence, to recover in such an action, the purchaser must return or offer to return whatever he has received on the contract. In case of real estate, the return or offer to return must be by way of reconveyance. *Pearsoll v. Chapin,* 44 Pa. St., 9; *Wilbur v. Flood,* 16 Mich., 41. The same rule would seem to prevail in case of a note and mortgage transferred by regular assignment; but here there is no regular assignment, and this seems to obviate the necessity of a reassignment. So, if it was necessary to renew the offer to return upon the trial, the fact that the note and mortgage were offered in evidence, would seem to have enabled the court to protect the rights of the seller, and hence to obviate the necessity of a formal re-offer. So, the fact that the plaintiff did not return, or offer to return, the amount of interest received, is no bar to the action, since that could readily be deducted from the amount of the recovery.

Of course, one buying what the seller represents to him as white acre, relying upon such representations, when the property so purchased is in fact black acre, fails to get the thing for which he contracted, and hence may rescind without showing absolute pecuniary loss. But this does not seem to be such a case. Here the thing purchased was not the land described in the mortgage, but the debt evidenced by the note. To this the land described in the mortgage

was merely incidental and collateral. The plaintiff's recovery would, of course, be limited to the amount due on the note, however valuable may have been the land. On payment of the note the mortgage would cease to have any binding force. Whether the land would ever be resorted to depended upon whether the note should be paid by the maker or enforced out of the land. If enforced out of the land, then the amount of the land taken would depend upon its value. The land, therefore, figures in the transaction only as security. It was purely incidental and collateral to the thing purchased. If, after the release, the note continued to be amply secured, so that there could be no possibility of loss, then the plaintiff got the thing for which he contracted, notwithstanding the concealment of a fact collateral to it. Of course, there must be a causal relation between the alleged fraud and the alleged injury to warrant a recovery. But where the thing obtained is the thing contracted for, and there can be no loss, then there cannot be any damage appreciable in law, and hence it would seem that in such a case there can be no causal relation between the alleged fraud and the supposed injury, for the reason that the supposed injury is not established.

These views might be enforced by argument and authority. Without making the attempt, I am constrained to withhold my assent from so much of the opinion filed as is inconsistent with the views above expressed. I am not prepared to say, however, that the judgment should be affirmed. The complaint alleges, in effect, that the release of the twenty-two acres rendered the security inadequate and of but little value. It seems to me that the allegation is not very well supported by the evidence. But a majority of the court think there is some, and I am not prepared to say there is none, especially in view of one portion of the charge to the jury. The court charged the jury, in effect, that they could not find that the defendant fraudulently concealed the

AUGUST TERM, 1883. 15

State ex rel. Town of Manitowoc vs. County Clerk, etc.

release, unless it lessened or materially affected the value of the note and mortgage *as security*, and that if the release was not material to the contract, and did not lessen or materially affect the value of the *security*, then, although the defendant may not have communicated this fact to the plaintiff, yet he could not be charged with fraud in the concealment. This I understand to be the correct rule of law, and if supported by the evidence it does away with the very ground urged in favor of the judgment. Under this charge the jury must have found that the release rendered the security inadequate. Assuming that there is evidence sufficient upon which to base it, I concur in the reversal of the judgment.

A motion for a rehearing was denied December 11, 1883.