Ex parte A. N. WELBORN, Petitioner, v. R. L. FAULCONER.

Division Two, November 14, 1911.

1. DEPOSITIONS: In Criminal Cases: Sec. 5173, R. S. 1909: Commission. The right to take depositions in criminal cases is statutory, and the statute requires no affidavit or written application. Under Sec. 5173, R. S. 1909, the defendant may have witnesses examined, conditionally, in his behalf exactly as in civil cases, save that a commission must issue. The commission issues on demand as a matter of right without any preliminary showing; the sole prerequisite to its issue is that defendant desires one and asks for it. Not the taking but the use of depositions taken under Sec. 5173, R. S. 1909, is limited; and the method of taking the depositions authorized by Secs. 5171 and 5172, is entirely distinct from that used in this case.

2. ———: ———: ———: ———: Direction to Notary. The commission to take depositions in this case is said to be unexceptionable in form, and the objection that it was not directed to the notary by name must be overruled.

3. ———: ———: ———: Witnesses on Behalf of Defendant: Advice of Counsel. The defendant and his counsel in a criminal case have the right to determine who are witnesses in defendant's behalf. When summoned by a defendant in a criminal case, a witness cannot refuse to give his deposition, because he has testified before the grand jury, was subpoenaed by the State, and has been advised by the prosecuting attorney that he knows no facts which would benefit the defendant. Nor is the witness aided, when committed for contempt, by the fact that he refused to testify on the advice of counsel.

4. ———: ———: ———: ———: Having Appeared Before Grand Jury. The taking by the defendant in a criminal proceeding of the deposition of a witness who has appeared before the grand jury and whose name is indorsed upon the indictment, cannot be forbidden upon the ground of public policy. No considerations of policy derived from the common law of criminal proceedings can be relied upon to overturn statutes, the purpose of which was to supplant that policy with another.

5. ———: ———: ———: ———: Oath Before Grand Jury. A witness is not to be excused from giving his deposition when summoned by the defendant in a criminal proceeding, on the ground that he has been a witness in the same case before the grand jury and has been sworn not to disclose any fact concerning which he "shall here testify, unless lawfully required to testify in relation thereto." (R. S. 1909, sec. 5070.) If the deposition is being lawfully taken the deponent is "lawfully required to testify."

6. ———: ———: ———: ———: Good Faith of Defendant: Habeas Corpus. Since the petitioner for this writ of *habeas corpus* refused, when required to give his deposition at the summons of the defendant in a criminal proceeding, either to be sworn or to testify at all, the record does not present to the Supreme Court any question as to the said defendant's good faith in taking the deposition.

7. CONTEMPT: Order of Commencement: Habeas Corpus. In this application for a writ of *habeas corpus*, seeking the discharge of the petitioner from imprisonment for contempt in refusing to give his deposition before a notary, the record of the notary sets forth all the facts constituting the contempt, and shows an order and "judgment" that petitioner be committed for the doing of the things which constituted it. The fact that the word "contempt" is not used in the order is no such irregularity as to render the order and commitment void.

8. DEPOSITIONS: In Criminal Cases: Extent of Examination of Witnesses: Policy of Statute. The Legislature having specifically authorized the taking as in civil cases of the deposition of *any*

witness by a defendant in a criminal case, the extent to which the examination may go is the same as in the taking of depositions in a civil case. With the policy of the statutes on this subject the courts have nothing to do.

## Habeas Corpus.

PETITIONER REMANDED.

*Walter L. Chaney* for petitioner.

(1) The commission under which the notary assumed to act was void for the reason that no showing was made to the circuit clerk by evidence, petition, application, affidavit or otherwise. R. S. 1909, secs. 5171, 5173, 6385, 6386 and 6398; 13 Cyc. 859, 860, 868, "9" (b). (2) The pretended commission under which the notary assumed to act was void on its face, as it ran to all of the judicial officers and notaries public in the State, allowing the accused to select his own judge, and there being no limitation as to whom he might examine. 13 Cyc. 884, 885 and 886. (3) The phrase, "witnesses on his behalf," in the statute (sec. 5173) means witnesses in his favor, and cannot be construed into meaning that the defendant may examine the State's material witnesses by taking their depositions. Ex parte Marmaduke, 91 Mo. 237; Const. 1875, art. 3, sec. 22; Const. 1865, art. 1, sec. 18; Const. 1820, art. 13, sec. 9; State v. Berkley, 92 Mo. 46. (4) When the names of witnesses are indorsed on the indictment by the grand jury, they being material witnesses on behalf of the State, their evidence becomes a state secret, and their testimony is under control of the State; and such witnesses cannot "directly or indirectly divulge or make known to any person or persons the facts concerning which they shall have testified, unless lawfully required to testify in relation thereto." R. S. 1909, secs. 5070, 5071, 5171 and 5173; 1 Greenleaf on

Evidence, sec. 451; State v. Talbot, 73 Mo. 259; In re Green, 86 Mo. App. 220; State v. Hamlin, 47 Conn. 95; Gitchell v. People, 165 Ill. 175; People v. Nall, 242 Ill. 284; People v. Thompson, 122 Mich. 411; People v. Lauder, 82 Mich. 109; People v. Hulburt, 4 Denio, 135; State v. Fassett, 16 Conn. 457; McLellan v. Richardson, 13 Me. 82; 20 Cyc. 1355, note 58. In furtherance of justice and upon grounds of public policy the law requires that proceedings before grand juries shall be regarded as privileged communications, and the secrets of the grand jury room shall not be revealed. Gitchell v. People, 146 Ill. 175; Commonwealth v. Mead, 12 Gray (Mass.) 167; Tindle v. Nichols, 20 Mo. 326; Beam v. Link, 27 Mo. 262; State v. Campbell 9 L. R. A. (N. S.) 542; Gitchell v. People, 146 Ill. 174; 1 Greenleaf on Ev. sec. 252; 9 L. R. A. (N. S.) 942. (5) Before a person can be punished for a contempt, it must appear that there has been an adjudication and conviction or judgment adjudging the party guilty of contempt. Ex parte O'Brien, 127 Mo. 477; In re Shull, 221 Mo. 623; Sherwood v. Sherwood, 32 Conn. 1; Palmer v. Palmer, 28 Fla. 295; In re Farr, 41 Kans. 276; In re Simmons, 49 Mich. 511; Ex parte Adams, 25 Miss. 883; Matter of Crosher, 11 N. Y. Supp. 504; Ex parte Kearby, 35 Tex. Crim. 634; In re Blair, 4 Wis. 522; 9 Cyc. 48, "Q," note 61; 9 Cyc. 50, "4," note 79.

*Jas. W. Suddath* and *N. M. Bradley* for respondent.

BLAIR, C.—An indictment was returned in the circuit court of Johnson county against Benjamin M. Wilkinson, one count of which charged him with obtaining money from petitioner under false pretenses, and the other charged him with stealing the same money. Petitioner was a witness before the grand

jury, and his name was indorsed upon the indictment. Wilkinson was arrested, arraigned, and entered his plea of not guilty.

Thereafter, on the oral application of Wilkinson's attorney, the clerk of the court in which the indictment was pending issued a commission, in the usual form, to take depositions, notice was given the prosecuting attorney as required by the statute, and petitioner was duly subpoenaed to give his deposition in the case of State v. Wilkinson before Charles W. Fulkerson, a notary public. Petitioner ignored the subpoena and was brought in by attachment, whereupon he filed a written statement of his reasons for refusing to recognize the notary's authority, refused to be sworn and refused to answer questions put to him by Wilkinson's counsel. Efforts to induce petitioner to reconsider were unavailing and he was committed for contempt. He brings this proceeding to obtain his release by writ of *habeas corpus*.

The statute (Sec. 2472, R. S. 1909) plainly marks the boundaries of the discussion in this case, viz.: "It shall be the duty of the court or magistrate forthwith to remand the party, if it shall appear that he is detained in custody . . . . for any contempt, specially and plainly charged in the commitment, by some court, officer or body, having authority to commit for a contempt so charged."

The power of a notary engaged in taking depositions to commit a witness for contempt is not questioned, but it is contended that there was no lawful occasion for the exercise of that power in this instance.

The principal contentions are that the notary had no authority to commit petitioner because (1) the commission was void, (2) he was a witness for the State and consequently could not be a witness in defendant's "behalf," (3) petitioner having been before the grand jury, his name being indorsed on the indictment and he having been subpoenaed as a witness for

the State on the trial, his testimony is a "state secret," (4) to give his deposition would be violative of his oath before the grand jury, and (5) that the taking of the deposition was not in good faith.

1. The commission was not invalid because issued on an oral instead of written and verified application. The right to take depositions in criminal cases is statutory and the statute required no affidavit or written application. Since the defendant may have witnesses examined, conditionally, in his behalf exactly as in civil cases (Sec. 5173, R. S. 1909), save that a commission must issue, and since in civil cases a party to a pending suit "may obtain the deposition of *any* witness, to be used in such suit, conditionally," (Sec. 6384, R. S. 1909), the commission under section 5173 issues on demand as a matter of right without any preliminary showing.

The deposition of *any*, consequently *every*, witness may be taken, and the sole prerequisite to the issuance of a commission under section 5173 is that defendant desires one and asks for it. An affidavit or written application setting forth such desire could serve no useful purpose. The Legislature saw no reason for it and neither do we. When it deemed them necessary, that body expressly required petitions and affidavits preliminary to the issuance of commissions (Secs. 6398, 6420), and the omission to make such requirements in section 5173 was clearly deliberate.

Decisions in cases arising in connection with the taking of depositions under statutes and rules of court in which a limitation is fixed upon the *taking* of the deposition are not in point. Not the taking but the *use* of depositions taken under section 5173 is limited, and the fallacy of the argument to the contrary, based upon the word "conditionally" in the section mentioned was long since accurately pointed out. [Ex parte Livingston, 12 Mo. App. l. c. 85; Tullis v. Stafford, 134 Ind. 258.]

The method of taking the depositions authorized by sections 5171 and 5172, Revised Statutes 1909, is entirely distinct from that employed in this case, anp the conditions imposed by those sections have nothing to do with the taking of depositions under section 5173, as the sections themselves disclose.

It may be added that the commission was in unexceptionable form and the objection that it was not directed to the notary by name must be overruled. [Borders v. Barber, 81 Mo. 1. c. 639.]

2. The statute (Sec. 5173) providing that "the defendant in any criminal cause may also have witnesses examined *on his behalf*, . . ." it is argued that since petitioner testified before the grand jury, was subpoenaed by the State, and had been advised by the prosecuting attorney that he knew no facts which would benefit Wilkinson, he was a witness for the State and could not be a witness in Wilkinson's "behalf." This carries with it its refutation. Neither the grand jury, the witness, nor the prosecuting attorney could determine for Wilkinson who were witnesses in his behalf. He and his counsel have the right to determine that, and they did so, so far as petitioner is concerned, for all the purposes of section 5173, when they caused him to be subpoenaed to give his deposition. Further, whether petitioner had knowledge of facts which would benefit Wilkinson on the trial was a matter for the latter and his counsel to decide.

If the prosecuting attorney or the witness can, directly or indirectly, determine for Wilkinson who are witnesses "in his behalf" under the provisions of section 5173, they can perform the same function with respect to his rights to "process to compel the attendance of witnesses in his behalf" (Sec. 22, art. 2, Const. of Mo.) on the trial itself.

A somewhat analogous question was decided against petitioner's contention in State v. Krueger, 69 Mo. App. 31.

Nor can the fact that petitioner acted on the advice of counsel aid him. That fact might mitigate punishment in case of a contempt punishable by a fine or fixed term of imprisonment, but it cannot avail to discharge a contemnor committed for the purpose of coercing his compliance with a lawful order made by lawful authority.

3. It is earnestly insisted that considerations of public policy forbid the taking of the deposition of a witness who has appeared before the grand jury and whose name is indorsed upon the indictment. Counsel invoke the old common law rule in support of their position.

One of the announced purposes of the common law in cloaking with secrecy the proceedings of the grand jury was the prevention of the subornation of perjury to meet the Crown's evidence, and this is strongly urged upon our consideration. That was a part of a system which denied the defendant counsel, kept him in close confinement until the hour of trial, refused him the right to call witnesses, sent juries to jail for returning verdicts of acquittal and which, in short, was devised to convict the accused rather than to try the truth of the charge against him. In many respects, including the feature now pressed upon our attention, the rule in England has been changed by statutes (6 & 7 Will. IV. c. 114, s. 4; 11 & 12 Vic. c. 42; 30 & 31 Vic. c. 35), under which a criminal trial bears greater resemblance to a legal proceeding.

The present policy of English law is to be gathered from these statutes. Likewise the policy of our law is evidenced by our statutes. No considerations of policy derived from the common law can be relied upon to overturn statutes, the purpose of which was to supplant that policy with another. The enactment by the Legislature of statutes requiring the indorsement upon indictments and informations of the names of the State's witnesses for the information of the

defendants (Secs. 5097 and 5057, R. S. 1909; State v.
Myers, 198 Mo. l. c. 245), affording defendants an
opportunity to hear the testimony of the State's
witnesses and to call witnesses before examining magis-
trates (Secs. 5026 and 5027, R. S. 1909), and according
them the right to demand a preliminary examination
under certain circumstances (Sec. 5056, R. S. 1909),
evidences a policy materially at variance with the
purpose which gave origin to the rule relied upon.
Our Legislature has proceeded upon the theory that
truth has nothing to fear from light.   In view of these
enactments and the policy they indicate, we are unable
to see how it is possible to employ the rule of the
common law to excuse petitioner's contumacy, pro-
vided he is not excepted from the all-embracing terms
of section 5173 by force of some other controlling
statute.

4.   It is urged that since petitioner testified before
the grand jury he cannot give his deposition without
violating the oath he took as a witness before that
body.   The oath administered to witnesses before
grand juries (Sec. 5070, R. S. 1909) binds them, among
other things, not to disclose any fact concerning which
they "shall here testify, unless lawfully required to
testify in relation thereto."

It is obvious that if there is no other legal obstacle
save the clause of the oath quoted, it does not  prohibit
the taking of petitioner's deposition, provided his
being compelled to give his deposition is equivalent
to his being "required to *testify*."   To "testify" is
to "make a solemn declaration, verbal or written, to
establish some fact."   [Case v. James, 90 Wis. l. c. 322;
O'Brien v. State, 125 Ind. l. c. 44; Nash v. Hoxie,
59 Wis. l. c. 388; Gannon v. Stevens, 13 Kas. l. c. 459;
State v. Robertson, 26 S. C. l. c. 120.]

Under the provisions of a statute empowering
a litigant to compel his adversary "to testify in his

237 Sup.—20

behalf," the Supreme Court of Connecticut, in a proceeding by writ of *habeas corpus* (Buckingham v. Barnum, 30 Conn. 358), denied the existence of a "distinction between testimony given on the trial itself and testimony taken in the form of a deposition," and affirmed a judgment remanding the petitioner who relied upon such distinction for his discharge after commitment for refusal to give his deposition.

These authorities and the ordinary and accepted meaning of the word "testify" convince us that the oath taken before the grand jury constitutes no obstacle to the taking of petitioner's deposition. If the deposition is being lawfully taken the deponent is lawfully required to testify, and the obligation of his oath is met even when the oath is construed to mean all that counsel for petitioner contend it does mean.

5. It is unnecessary to discuss the cases holding that a witness cannot be committed for refusing to answer questions which themselves disclose that no answer made could possibly be relevant to any issue in the case in which the deposition is being taken. No such question is in this case. If it be true that the money Wilkinson is accused of obtaining by improper means was furnished him by petitioner and paid out by Wilkinson as agreed, for the purpose of settling a civil suit in which petitioner was defendant, that seems an important fact in Wilkinson's defense. The questions put tended to elicit evidence on this theory. They were clearly relevant to the issue in the pending case.

Since petitioner refused to be sworn or testify at all, the record does not present any question as to Wilkinson's good faith in taking these depositions. [In re Hammond, 83 Neb. l. c. 644.] However, the questions put were relevant to the issue, there is no indication of a design to oppress and none of an officious effort to pry into petitioner's private affairs not pertinent to the issues in the pending case. There

was no suggestion that petitioner's answers might incriminate him.

Except for some loose allegations in the form of conclusions, the sole basis of the charge of bad faith, outside the fact that the witness is among those relied on by the State, seems to be that the questions put were leading. It is urged that the effort was merely to cross-examine. No objection to the form of the questions was made. The remedy for improper form is not by refusal to answer. If no objection is made before the notary to the form of question put, the answers could not be excluded on the trial because the questions are leading. Direct examination, as it is argued, is a condition precedent to cross-examination. It does not follow, however, that every examination in which leading questions are employed is a cross-examination in that sense. The form of the questions put cannot be relied upon as ground of discharge in a case of this kind.

For these additional reasons no question of good faith in taking petitioner's deposition arises on this record. It is therefore unnecessary to pass upon any such question and unnecessary to decide whether petitioner could raise any such question in this proceeding. [See Ex parte Brockman, 233 Mo. 1. c. 153.]

6. The record of the notary and exhibits brought here disclose that petitioner filed a written refusal to be sworn and testify; that despite the notary's efforts to induce him to be sworn, he refused to do so and also refused to answer the questions put to him, the relevancy of which we have elsewhere considered.

The record of the notary sets forth all the facts constituting the contempt, including the questions propounded and the refusals to answer, and shows an order and "judgment" that petitioner be committed for the doing of the things which constituted it. [In re Shull, 221 Mo. 1. c. 628.]

The fact that the word "contempt" is not used in the order is of no importance. The conduct of petitioner constituted the contempt. The use of the word could not make that contempt which is not so, nor can the failure to use the word in the order devest the petitioner's conduct of its contemptuous character. Certainly it is no such irregularity as to render the order and commitment void. [Ex parte Crenshaw, 80 Mo. l. c. 456.] The commitment is not assailed and is in proper form.

7. The Legislature having specifically authorized the taking as in civil cases of the deposition of *any* witness by a defendant in a criminal case, the extent to which the examination may go is the same as the taking of depositions in a civil case. With the policy of the statutes on this subject we have nothing to do. That is the business of the Legislature. [Tullis v. Stafford, 134 Ind. l. c. 261.]

The petitioner is remanded. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.