STATE of Missouri, Respondent,

v.

Dennis McGEE, Appellant.

No. WD 39859.

Missouri Court of Appeals, Western District.

Sept. 6, 1988.

Daniel L. Radke, Public Defender, St. Joseph, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and LOWENSTEIN and FENNER, JJ.

CLARK, Presiding Judge.

Appellant Dennis McGee was convicted of assault in the first degree. He was found to be a prior and dangerous offender and was sentenced by the court to a term of thirty years. Appellant raises five points of alleged trial error, but he makes no challenge to the sufficiency of the evidence. The facts will therefore be stated with brevity.

On the evening of March 26, 1986, one Christopher Courtin was drinking in a tavern in St. Joseph. Among persons observed to be with Courtin was appellant. Courtin left the tavern before midnight in a highly intoxicated state. Some distance from the tavern, Courtin was attacked, beaten, cut with a knife and robbed. Although Courtin was unable to describe or identify his attacker, a witness who lived near where the assault occurred was alerted by the barking of his dog and he went outdoors while the encounter was still in progress. The witness identified appellant as the assailant. Clothing which appellant had worn the night in question was recovered from appellant's home and was found to be bloodstained.

In his first point, McGee contends the trial court erred when it failed to suppress the evidence consisting of the clothing worn by appellant the night of the crime. He asserts the evidence was the product of an illegal search of and seizure from his residence made without a warrant. We conclude that because the clothing was voluntarily delivered to the police by appellant's wife, there is no merit to the point.

The facts relevant to acquisition of the evidence are as follow. On the day following the assault upon Courtin, four or five detectives from the St. Joseph Police Department went to appellant's home. Appellant's wife answered the door and was told by the detectives that her husband was suspected of involvement in an assault. They requested permission to search the house, but Mrs. McGee refused. The detectives then asked if they could see the clothes appellant had worn the previous night. Mrs. McGee went to the second floor of the residence, obtained the garments and gave them to the detectives who then left. No search of the premises was conducted or attempted.

Appellant contends his wife was not entitled to consent to a search of the house, that she had no authority to deliver his garments to the police and that she acted only because of intimidation by and fear of the officers. For these reasons, he argues that the evidence was unlawfully acquired and should have been suppressed.

■ In the first place, there was no showing under the evidence that any search of appellant's home occurred or any seizure of evidence was made. Mrs. McGee voluntarily delivered the clothes to the detectives in response to their request. If, however, in the broadest sense of the term, it be concluded that the police acquired the garments by a seizure in that the request for Mrs. McGee to produce them was equivalent to a search, the search and seizure were consensual. Search without a warrant is valid if done under proper consent voluntarily given. *State v. Blair*, 638 S.W.2d 739, 750 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983).

■ Appellant seeks to overcome the fact that his wife gave the clothes to the detectives by arguing that Mrs. McGee had no authority to agree to a search of the house or to the taking of the garments and, if she did, it was the result of coercion and was therefore involuntary.

The evidence was uncontroverted that the premises were the residence which ap-

pellant occupied with his wife and children. The law is well settled that the consent of one person who possesses common authority over premises or effects is valid as against the absent nonconsenting person with whom the authority is shared. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). As a co-occupant of the dwelling with appellant, Mrs. McGee had equal authority to provide the police access to the premises and contents.

■ The claim that Mrs. McGee did not voluntarily consent to the search, if such it was, is equally unfounded. There was no evidence any threats were made by the officers or any indication of force or intimidation. Appellant simply argues that because his wife was a small person and the detectives were large men who were armed, she was subjected to "implied coercion." A consent otherwise freely given is not an involuntary act absent proof that force or coercion was applied. *See State v. Johns*, 679 S.W.2d 253, 262 (Mo. banc 1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985).

Appellant next argues the court erred in permitting detective Nash to testify regarding statements made by appellant when he was interrogated following his arrest. He bases the point on a contention that his arrest without a warrant was unlawful because the arrest was made without probable cause to believe appellant had committed the offense. He also claims the statement was involuntary.

On the morning following the crime, appellant was arrested and taken to police headquarters. According to the state's evidence, appellant was given his *Miranda* warnings, *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and he signed a form, later introduced in evidence, indicating that he had been informed of and understood those rights. He was questioned about the clothing obtained from his wife under the circumstances described earlier in this opinion, and he explained the bloodstains as having resulted when he had cut his finger a week earlier. He was also asked if he would submit to a polygraph test which he declined. When appellant mentioned wanting to discuss the test with his lawyer, the questioning ceased.

The principal complaint appellant makes is based on his claim that when he was arrested, the only evidence the police had connecting him with the assault was the statement by a witness who saw appellant leave the tavern with the victim. He contends this was not enough of a connection to justify his arrest without a warrant and, on this account, his statements were "fruit of the poisonous tree."

■ Assuming for the sake of the point that the arrest was without probable cause and, also, that the statements made by appellant and repeated above were somehow incriminating, those facts alone do not require that the statement be suppressed. The exclusion of a confession does not result merely because it follows an illegal arrest, but only when there is a causal connection between the arrest and the confession which overbears the free will of the accused and results in the confession being involuntary. *State v. Pollock*, 603 S.W.2d 614, 616 (Mo.App.1980). In this case, the state's evidence showed, and the trial court was entitled to conclude that appellant was fully informed of his rights and made the statements in question without any threats or promises being made. The court was therefore entitled to find that the arrest, even if without probable cause, was not a factor tending to coerce appellant or overbear his free will. The court correctly overruled objections to the statement.

The next two points raised by appellant are interrelated and arise out of the following sequence of events. Appellant was originally charged by information but, after a preliminary hearing, he was ordered discharged for lack of proof showing probable cause to believe he committed the offense. On the same day the order was made, the prosecutor refiled the same charge. That case was scheduled, after a continuance, for preliminary hearing on November 14, 1986. In the meantime, the prosecutor had presented the case to a

special grand jury which returned a true bill indicting appellant on November 14, 1986. The prosecutor concurrently dismissed the information.

The consequence of this sequence of events was that appellant had no preliminary hearing, the finding of probable cause being the decision by the grand jury to return the true bill. The two points of error appellant raises contend either that the procedure the prosecutor used to bring him to trial was unconstitutional in that he was denied a preliminary hearing and therefore precluded from cross-examining and impeaching his accusers at that stage of the case or, the court erred in refusing appellant the opportunity to impeach the state's witnesses by showing inconsistencies in their grand jury and trial testimony.

■■■ The first proposition appellant advances turns on the question of what latitude is available to a prosecutor in choosing to proceed against an accused by information or indictment and when the course of action taken may be altered. There can be no doubt that under § 545.010, RSMo 1986, prosecution of a felony may be by information or indictment and a prosecutor is entitled to exercise his discretion as to which course of action he selects. *See State v. Greer*, 605 S.W.2d 93, 97 (Mo. 1980), *vacated on other grounds*, 451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981). Moreover, a defendant in Missouri has no constitutional right to be charged with a crime by information, *State v. Thomas*, 674 S.W.2d 131, 136 (Mo.App.1984), *cert. denied*, 469 U.S. 1223, 105 S.Ct. 1213, 84 L.Ed.2d 354 (1985), and therefore no cause for complaint if, by the choice of the prosecutor to proceed by indictment, the accused is denied the opportunity for a confrontational preliminary hearing.

■■■ It is an associated proposition with the entitlement of the prosecutor to select between charging methods that an accused may not be simultaneously prosecuted for the same felony by information and by indictment. The court entertaining the first charge, whether by information or by indictment, obtains exclusive jurisdiction over the case. Section 545.010, RSMo

1986. Thus, appellant would have cause to complain if the prosecutor had not dismissed the information as he did. Here, there was no dual prosecution and, because appellant had no right to insist that the complaint by information be followed to the exclusion of the alternative of the indictment, there was no error in proceeding to trial on the indictment. The denial of a preliminary hearing as scheduled on the information was merely a procedural consequence of the choice to substitute the indictment and was no source of trial error.

As to the other contention, appellant suggests that he should have been allowed access to the testimony given by the witnesses before the grand jury, not for the purpose of attacking the true bill, but to show inconsistencies between that testimony and the same witnesses' testimony at trial. To accomplish this, appellant sought unsuccessfully to compel the grand jury witnesses to reveal to him the evidence they gave and, that failing, to obtain accounts of that testimony from the grand jurors. Appellant says the denial to him of these resources denied him a fair trial, due process of law, equal protection and the right to confront and impeach the witnesses against him.

The common law and the statutes generally provide that grand jury proceedings are to be conducted in secret. Section 540.-080, RSMo 1986, requires of grand jurors that they subscribe to an oath not to divulge matters which come before them. Section 540.110, RSMo 1986, requires a similar oath be taken by witnesses appearing before the grand jury. This concept of secrecy is a vestigial remainder of the common law format in which an accused was denied any attorney, was refused the right to call witnesses and was kept in close confinement until the hour of trial, all designed to prevent subornation of perjury. *Ex Parte Welborn*, 237 Mo. 297, 304, 141 S.W. 31, 34 (1911). The common law rule of secrecy in grand jury proceedings has been modified by statute, but only to the extent that statutes have addressed particular areas to remove the commands of se-

crecy. *State v. McDonald*, 342 Mo. 998, 1004, 119 S.W.2d 286, 288 (1938).

▮ Practice requires that if an indictment is returned, the names of the witnesses be endorsed. Of necessity, therefore, when an indictment is returned, the subject matter inquired into by the grand jury becomes public knowledge as do the names of the witnesses. It has long been the settled rule that the grand jury oath is not breached when a grand jury witness is called upon to give his deposition, provided the giving of the deposition is equivalrnt to calling the witness to testify. *State ex rel. Clagett v. James*, 327 S.W.2d 278, 282 (Mo. banc 1959), citing *Ex Parte Welborn, supra*. So, too, if minutes of witnesses' testimony before a grand jury have been kept, those may be ordered produced for inspection by the accused if the judge deems such proper to meet the ends of justice. *State ex rel. Clagett v. James*, 327 S.W.2d at 283. But other proceedings by the grand jury, including statements, opinions, actions and deliberations, are not to be disclosed.

In the present case, it would appear no record was made of the actual testimony by the grand jury witnesses and that appellant sought to overcome this obstacle by undertaking to question the witnesses and grand jurors to obtain from them a restatement of what they said or heard. The denial of that opportunity is claimed by appellant to have been a violation of the rights enumerated earlier in this opinion.

▮ No case has been cited or found which speaks directly to this question. It is, however, the rule that grand jury proceedings are to be kept secret except as statutes have specifically modified that rule. *State v. Greer*, 605 S.W.2d at 96. Appellant has directed our attention to no statute or rule which authorizes the procedure he attempted, that is, an order compelling grand jurors or grand jury witnesses to recount the testimony they gave in secret. Assuming for purposes of the point that a court has the authority to make such an order directing the witness to violate his oath of secrecy, the movant seeking the order would be obligated to make the same showing necessary to obtain a transcript of

grand jury testimony. He would be obligated to show that the disclosures were necessary to meet the ends of justice.

▮ In the present case, appellant did not support his efforts to obtain the testimony from the grand jury witnesses or the grand jurors by any showing of how justice required this particular relief. There and here he has merely asserted the rights of confrontation and a non-specific expectation that some basis for impeaching a witness or witnesses would turn up. Moreover, the trial court did obtain the attendance of three grand jurors who sat through the trial under instructions that they were to listen to the testimony for inconsistencies. Although appellant had the opportunity to do so, he did not call these grand jurors to testify, as he could have done under § 540.300, RSMo 1986.

If the trial court did have discretion to grant appellant the right to question the grand jury witnesses or the grand jurors as to what testimony was presented to the grand jury, the court did not in this case abuse its discretion by denying the relief. There was no evidence at all that such a measure was necessary to meet the ends of justice or that any particular feature of the case warranted such action. The point is denied.

▮ In his final point, appellant contends the trial court erred when it overruled defense objections to certain questions asked on re-examination of state's witness, Ron Davis. The latter was the neighbor who identified appellant as the perpetrator of the assault. In cross-examination of Davis, defense counsel adduced evidence about favorable disposition Davis had received on a charge of driving with a suspended license, the implication being that his testimony in this case had been influenced by the prosecutor's leniency toward Davis.

On re-direct questioning of Davis, the prosecutor asked for details of the driving suspension and what he had been told by the prosecutor's office and by his own attorney. Appellant objected to the questions as leading and because the answers

sought were hearsay. The court overruled the objections and the answers were made.

The objections to the leading nature of counsel's questioning did not raise any significant issue and the trial court's rulings, in light of its authority to control the trial, were proper. That point on appeal will not be discussed in any detail.

In the area of the hearsay objections, it is necessary to consider the context in which the subject was being pursued. The defense was attempting to show that Davis was motivated to make his positive identification of appellant by the inducement of favorable disposition in his pending driver's license case. The state was undertaking to show the contrary and took up the questioning on re-direct examination of Davis because the subject was first raised on cross-examination. The underlying question was what external influence, if any, provided some incentive for Davis to favor the prosecution.

Hearsay evidence is admissible if it is offered, not for its truth, but to establish what information an actor may have possessed and how the actor's conduct has been prompted by that information. *Goodman v. State Farm Insurance Co.,* 710 S.W.2d 423, 424 (Mo.App.1986). In the present case, the questioning of Davis about his driver's license, what was the reason for the suspension and what was the status of his insurance was not intended to prove whether or not he had insurance or a right to drive, but what his collateral dealings may have been with the office of the prosecutor operating to influence his testimony in this case. This is a well recognized exception to the rule against hearsay testimony. The court did not err in overruling the objections.

The judgment is affirmed.

All concur.