HUGH MANNON, Appellant, v. WILLIAM Y. FRICK, STILLMAN BEARY and FIDELITY AND CASUALTY COMPANY OF NEW YORK, a Corporation, Respondents, No. 45192—295 S. W. (2d) 158.

Division Two, November 12, 1956.

*R. M. Gifford* for appellant.

L. F. *Cottey* and P. M. *Marr* for respondents.

[160] EAGER, P. J.—The present suit is one for damages, actual and punitive, in which it is alleged that the defendants wrongfully and fraudulently conspired to, and did, extort money from the plaintiff under a threat of prosecuting him for statutory rape. Defendant Frick was then the Prosecuting Attorney of Putnam [161] County, having been appointed shortly prior to the occurrences in question, and defendant Beary was the Sheriff of that county; the corporate defendant had executed the sheriff's bond. The trial court directed a verdict for the sheriff and the corporate bondsman, and the jury returned a verdict in favor of defendant Frick. In the view we take of the case it will not be necessary to review the evidence in detail. Suffice it to say that defendant Frick testified that he accepted money from plaintiff in partial settlement of a civil claim for damages for alleged slander, and that he returned it when he severed his connections with the prospective plaintiff. In fairness to the plaintiff, who was 71 years of age at the time of trial, we note that the evidence in this case did not tend to show that he was guilty of the crime referred to.

We are met at the outset with a motion to dismiss the appeal or affirm the judgment for the insufficiency of appellant's brief under Rule 1.08, both in its statement of facts and in the points relied on. Respondents' counsel have chosen to stand on that motion and have filed no brief here on the merits. That practice is in nowise to be commended and we trust that no other member of the bar will adopt it. It has certainly not been helpful to the court here. The statement of facts in appellant's brief leaves much to be desired; certain of the points relied on are insufficient under the rule, but others, which group themselves into two classifications, are considered sufficient. The motion is overruled, and we shall proceed to consider those points which we deem properly raised.

The first of these is that the court erred in admitting certain evidence of the proceedings before a grand jury convened in February, 1954, in Putnam County, which apparently investigated charges against these officials. This evidence consisted of: the identification of copies of two documents which were produced before the grand jury and which were subsequently lost, after being taken away by an Assistant Attorney General; the opinion of the latter that a signature on the original of one of these documents was that of the plaintiff; and testimony to the effect that certain other papers were also produced before the grand jury. The defendant Frick had pro-

duced for the grand jury both of the exhibits which were subsequently lost, and, of course, they were never returned to him. The official court reporter, the Assistant Attorney General, defendant Frick, and one of plaintiff's former attorneys gave testimony concerning the lost exhibits and the correctness of one or both of the copies.

Counsel for plaintiff made various and sundry objections to the use of any and all evidence concerning matters which transpired in the grand jury room, as violative of the secrecy of such proceedings; he apparently takes the view that in no event may anyone testify to any such matters unless required to do so in court in a subsequent criminal proceeding. First, we shall examine the applicable statutes; all references herein are to RSMo, V.A.M.S., unless otherwise specified. Section 540.110 provides for and sets out the oath to be administered to witnesses appearing before a grand jury; therein he or she swears that he (or she) will not divulge the fact that the matter or matters in question are being considered or any other fact or thing there transpiring, *"unless lawfully required to testify in relation thereto."* Section 540.120 provides a penalty for the violation of that oath. Section 540.105 provides for the oath of the official reporter, and does not contain the specific exception of § 540.110. The purport of § 540.300 is that members of the grand jury may be required by any court to testify whether the testimony of a witness before such court is consistent with his or her prior testimony before the grand jury, and that they may also be required to testify similarly upon any complaint against a grand jury witness for perjury; § 540.320 provides, in substance, [162] that members of the grand jury shall not disclose any evidence given or the names of any witnesses, "except when lawfully required to testify as a witness in relation thereto" and that they shall not disclose the fact that an indictment has been found until the defendant has been arrested. A violation of the last provision is made a misdemeanor.

The reasons for the policy of secrecy in connection with grand jury proceedings are fully discussed in Vol. VIII, Wigmore on Evidence (3rd Ed.), § 2360. In somewhat less detail, these are generally said to be: to protect the jurors themselves; to promote a complete freedom of disclosure; to prevent the escape of a person indicted before he may be arrested; to prevent the subornation of perjury in an effort to disprove facts there testified to; and to protect the reputations of persons against whom no indictment may be found. 24 Am. Jur., Grand Jury, §47. Some of these reasons have since been considered as of somewhat decreased importance, as in Ex parte Welborn, 237 Mo. 297, 141 S.W. 31, 34; State v. Thomas, 99 Mo. 235, 12 S.W. 643; and, indeed, the statutes themselves have considerably eroded the strict common law rule.

In the very early case of Tindle v. Nichols (1855), 20 Mo. 326, the court held that a grand juryman should not be permitted to testify

in a civil slander suit as to what the defendant said before the grand jury; this, for the reason that he might only testify to the matters expressly provided in the statutes, which were then and are now substantially the same; further, the court held (when we transpose the section numbers) that § 540.320 did not broaden the provisions of § 540.300, or in other words, that a grand juryman may only testify to the matters provided in our present § 540.300. It may be that the court there held that a grand juryman could only testify in a subsequent criminal case. There has been much discussion as to what this case really means (State v. Campbell, 73 Kan. 688, 705, 85 P. 784). That opinion was followed in the cases of Beam v. Link, 27 Mo. 261, and Kennedy v. Holladay, 105 Mo. 24, 16 S.W. 688, neither of which added anything material by way of discussion. Plaintiff also cites the cases of State v. Johnson, 115 Mo. 480, 22 S.W. 463, State v. Salmon, 216 Mo. 466, 115 S.W. 1106, and Conway v. Quinn, Mo. App., 168 S.W. 2d 445. The Johnson case involved an effort to invalidate an indictment by showing irregularities in the grand jury proceedings; and this, by offering evidence of grand jurymen and admissions of the prosecuting attorney; it was held that such evidence, and also evidence as to the reasons for the voting of the indictment, could not be received by way of impeachment. Similarly, in the Salmon case the essential question was whether an indictment was vitiated by the unauthorized presence of a stenographer, who was also a witness, and who took notes in the grand jury room and read them back to the jury. (The statute providing for an official grand jury reporter was adopted in the Laws of 1951, p. 461. The court held, on a plea in abatement, that the indictment was invalid; objections were made to the evidence when offered, but on the appeal the facts seem to have been conceded (115 S.W., l.c. 1121) and the admissibility of the evidence was not decided. In the Conway case the court held that the Judge of the Criminal Court of the City of St. Louis could not lawfully require a stenographer, designated by the prosecuting attorney to take notes in the grand jury room, to furnish a transcript to the court; by the express terms of the statute under which the stenographer was appointed, he could only make disclosure to the prosecuting attorney or by testifying in open court. These cases are certainly not controlling here, and indeed the factual situations were so different that they are hardly persuasive on any feature. At best, they express mere generalities, so far as we are concerned here.

[163] Many of the states have statutes similar, in general, to those of Missouri. From our examination of the decisions in other states and of the works of text writers, it is our conclusion that the original rule of common law secrecy has been substantially modified, not only by the enactment of statutes, but by court decisions as well. Our statutes in themselves constitute a limitation of the common law rule, and an expansion of the right of disclosure. While there is

still considerable diversity of opinion on the subject, the weight of authority seems to be that, since the original rule of secrecy was adopted to protect and promote the public welfare, the law may, through its constituted tribunals, dispense with the observance of secrecy, and in the furtherance of justice require a witness or witnesses to testify to certain of the proceedings before a grand jury; and that such disclosure may be required either in the general public interest or in the protection of private rights. Some disclosures are still generally forbidden as, for instance, the votes of the respective grand jurymen, and their deliberations or expressions of opinion. (See § 540.310.) For expressions generally in accord with this view see the following cases: State v. McPherson, 114 Ia. 492, 87 N.W. 421; State v. Brewster, 70 Vt. 341, 40 A. 1037; State v. Putnam, 53 Or. 266, 100 P. 2; Hinshaw v. State, 147 Ind. 334, 47 N.E. 157; State v. Brumfiel, 188 Ind. 584, 125 N.E. 40; State v. Campbell, 73 Kan. 688, 85 P. 784; Metzler v. United States (C.A. 9th Cir.), 64 F. 2d 203; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 233-4, 84 L. Ed. 1129; and see also: Wigmore on Evidence (3rd Ed.), Vol. VIII, §§ 2360-2363, inclusive; 24 Am. Jur., Grand Jury, §§ 49, 50, and particularly the annotations in the Cumulative Supplement; Annotation in 127 A.L.R., pp. 272-312. Some courts have based a relaxation of the rule, in part at least, upon the fact that the purpose of the grand jury investigation has been accomplished and that the reason for secrecy no longer exists. 24 Am. Jur., Grand Jury, §§ 48, 49, pp. 866-7; Metzler v. United States, supra; Wigmore, supra, § 2362, p. 725. Some courts have held, however, that this circumstance does not justify a voluntary disclosure. United States v. Amer. Med. Ass'n. (D.C.), 26 F. Supp. 429. Of course, it is inherent that a disclosure may not be ordered in contravention of existing statutes.

It seems also that a broader scope of disclosure is generally permitted, and indeed required, of witnesses who appeared before the grand jury, than of the grand jurymen themselves. This may be largely on account of existing statutes. See, however: Wigmore, supra, §§ 2362, 2363; 24 Am. Jur., Grand Jury, § 49, p. 867; and cases collected in the annotation at 127 A.L.R., pp. 276-278. Indeed Wigmore states (supra, § 2362, p. 725): ''There remain, therefore, on principle, no cases at all in which, *after* the *grand jury's functions are ended*, the privilege of the witnesses not to have their testimony disclosed should be deemed to continue.'' We find no statutory restriction in Missouri concerning disclosure by a grand jury witness, except for the statutory oath itself. Indeed in some states no secrecy is imposed upon grand jury witnesses. The oath required of witnesses by § 540.110 contains the express words ''unless lawfully required to testify in relation thereto''; and there is no statute designating certain things which

witnesses may disclose as §§ 540.300 and 540.320 do in the case of grand jurymen.

In Ex parte Welborn, 237 Mo. 297, 141 S.W. 31, it was held that a witness who had testified before a grand jury might be required to give his deposition, since this was equivalent to being "lawfully compelled to testify." We may assume that the taking of the deposition would, in effect, disclose what the witness had testified to before the grand jury for we may not presume that he would testify differently. The court there indicated a considerable relaxation of the old rules of strict secrecy. [164] On the latter point see also: State v. Thomas, 99 Mo. 235, 12 S.W. 643. In the case of State v. Grady, 84 Mo. 220, 12 Mo. App. 361, the testimony of the prosecuting attorney was received to show that the grand jury had heard no evidence, although the court indicated that the testimony of members of the jury could not be received for that purpose. Cramer v. Barmon, 126 Mo. App. 54, 103 S.W. 1086, was a civil suit for false arrest and malicious prosecution; a grand juror was there held competent to testify as to what the defendant had said before the grand jury, since this bore on the "consistency" of the defendant's testimony under the statute (§ 540.300). This decision may run counter to the ruling in the case of Tindle v. Nichols, 20 Mo. 326. We certainly cannot accept plaintiff's contention that the subsequent testimony of a *witness* before the grand jury must be limited to criminal cases. See: Wigmore on Evidence (3rd Ed.), Vol. VIII, §§ 2362, 2363; 24 Am. Jur., Grand Jury, § 50, p. 867. More frequently, however, such testimony is actually required in criminal cases, from the very nature of the situation. Whether the subsequent testimony of a grand juryman is now so limited under §§ 540.300 and 540.320 we need not decide.

We note here that the strict rule announced in the case of Tindle v. Nichols, 20 Mo. 326, has been questioned and criticized. Wigmore, supra, § 2363, note 7; State v. Campbell, 73 Kan. 688, 85 P. 784. If we assume that it confines all subsequent testimony of a grand juryman to the occasions mentioned in § 540.300 and to criminal cases, we need not decide here the propriety of that ruling. We are dealing with other classes of persons, i.e., witnesses, an Assistant Attorney General, and the reporter. We prefer here to say, that so far as we are now concerned, the rule of the Tindle case should be confined strictly to the facts there disclosed. The disclosure made in the present case essentially concerned only the identification of copies of two executed receipts, the originals of which had been used before the grand jury and had subsequently been lost, and the testimony of a witness that in his opinion the signature of plaintiff on one of these receipts was his genuine signature. Both of these exhibits had been in defendant Frick's possession and had been produced by him before the grand jury. It was the defendants who offered this testimony to prove up their secondary evidence. There was certainly no urgent secrecy about

this evidence which, as a matter of public interest, would prevent its disclosure; the situation did not even involve the repetition of any oral testimony given before the grand jury. We hold that the evidence was properly received. We have some question of the propriety of the action of the reporter in giving to defendant Frick in advance of the trial a copy of one of these exhibits prepared from her notes. (See Conway v. Quinn, Mo. App., 168 S.W. 2d 445.) Mr. Frick was not then acting in his capacity as prosecuting attorney. However, the copy was furnished, produced, and fully identified at the trial, and under the circumstances no prejudice to the plaintiff resulted; this, because the reporter could have been required at the trial of the present case to read and transcribe her notes and there construct a similar copy.

In all such matters as we have been discussing, much must necessarily be left to the sound discretion of the trial court; indeed, the burden is not on the witness to say whether he shall testify, but strictly on the trial court to determine whether, under all the circumstances present, and weighing the reasons for secrecy against the present need for disclosure, the witness shall be required to testify; in the present case, though only private rights were involved, we do not think this discretion was abused.

■ The remaining assignments which we shall consider are: that the court erred in not acting, of its own motion, to disqualify the sheriff "from performance of any act" in the case because the sheriff was a party; [165] and that it also erred in overruling plaintiff's motion to quash the jury panel. These will require a brief statement of additional facts. The motion in question was heard and overruled by the Hon. George P. Adams who was assigned by order of this court, made on Feb. 25, 1955, to hear this case. Motions and amended motions to dismiss had been filed, and answer was not filed until July 19, 1955, so we assume that there was no trial setting until approximately that time. The motion to quash was filed on July 26, 1955, the day before the trial began; the grounds recited therein were that the sheriff was a party defendant and that the act of the sheriff in summoning any juror was illegal and prejudicial. The court heard evidence on that motion, immediately before the actual trial began. The only witnesses were the sheriff, Stillman Beary, and the coroner, Charles Fowler. It there appeared that Mr. Beary had summoned the regular jury panel in May, 1955; these jurors served and were discharged to appear later if notified; the sheriff testified that as best he recalled, he had later notified two of the jurors to appear on July 29th, telling them that there would be court that week; he further testified: that he thought a felony case was to be tried on that date, and that he did not then know that his case was set for that week, because he thought a motion was still pending; also, that he had summoned no one since the Special Judge had been there during the week preceding the trial. (We gather

from this evidence that the court then disqualified the sheriff, at least orally, and instructed the coroner to perform his functions, but no order of disqualification appears in the transcript.) Some effort was made on cross-examination to show that the sheriff had summoned more of the jurors, but that evidence is so vague as to be largely meaningless. Mr. Fowler had summoned all of the regular and alternate jurors for the trial on instructions from the court.

. Counsel for plaintiff insists that the sheriff was disqualified under §§ 58.190 and 476.080, RSMo, V.A.M.S. because he was a party. The purport of these statutes is that the coroner shall perform the duties of the sheriff when the sheriff is a party or is interested or disqualified, and that, in certain instances the court may appoint a process server. We may concede that a sheriff is not qualified to act in his own case. Probably this is not a discretionary matter, as is the disqualification of a sheriff for interest generally. Sec State v. Stewart, 274 Mo. 649, 204 S.W. 10.; State v. McDonald, 342 Mo. 998, 119 S.W. 2d 286; State v. Boesel, Mo., 64 S.W. 2d 243; State v. Young, 314 Mo. 612, 286 S.W. 29.

The only thing that the sheriff seems to have done here to cause complaint was to tell two jurymen, whom he saw in town, to report for jury duty during the week in question. So far as the transcript shows this was before any affirmative steps were taken to declare his disqualification. His action appears to have been entirely innocent, and indeed, appellant's counsel states in his brief: "It is not contended by the plaintiff that the sheriff exerted any influence or attempted to discuss the matter with any of the members of the panel * * *." Thereafter, the entire panel was regularly summoned by the coroner for the trial of this case. Under these circumstances we cannot see that any prejudice resulted to plaintiff. Had he desired an earlier disqualification he should have taken some action; it does not appear that the trial court ever had before it a motion to disqualify the sheriff; nor does it appear that plaintiff made any objection to any individual juror. In fact he does not now complain of the jury, collectively or individually. The case of State ex rel. Finch v. Duncan, 195 Mo. App. 541, 193 S.W. 950, is cited; there a deputy sheriff of Buchanan County served upon his own wife (purportedly both as deputy sheriff and as an individual) the jurisdictional notice in an insanity proceeding which he himself had instituted in such county; further, it appeared that the service [166] was made in Jackson County where she presumably resided. The court there held the notice void. The action was one in prohibition, and a motion to quash service of the notice was filed at the very outset. Thus the jurisdiction of the court was directly attacked. The case was primarily determined on the question of residence, but the court also held that service by a deputy outside his county was void, and that the husband, a party

directly interested, could not legally serve the original, jurisdictional process on which the whole proceeding was based. That case upon its facts is so different from ours that we think no further discussion is required. If there was any error in overruling the motion to quash the panel in the present case, it was certainly not prejudicial.

We are not impressed with the argument that the court should, of its own motion, have disqualified the sheriff. A special judge had been ordered to sit in this case; it was hardly incumbent upon him to search out independently and in advance the relationships, official positions or actions of the parties. Such matters should normally be called to his attention by motion. Moreover, this point was not raised in the plaintiff's motion for new trial and is not properly for our consideration.

Certain of the remaining points made are really immaterial, such as the one concerning the sufficiency of the petition, and one stating that public officials are answerable in damages for acts done beyond their duties, but under a "cloak of immunity." The statement that "the court erred in admitting incompetent, immaterial, and irrelevant evidence prejudicial to the plaintiff," means nothing under our rule.

The remaining assignment included in the points and authorities is: "The Court erred in sustaining the separate motion of defendants Beary and Fidelity and Casualty Company of New York for a directed verdict at the close of all of the evidence." We deem this insufficient to raise the question under our Rule 1.08 (d). We assume that counsel means that he thinks plaintiff made a submissible case against those defendants, but counsel makes no pretense of outlining the elements necessary in his proof or claimed to have been proved; nor is there any pretense of stating otherwise "why" the ruling was erroneous. Our cases have been very plain in holding that this rule contemplates a particularization. To this effect see: Haley v. Edwards, Mo., 276 S.W. 2d 153, 162; Berghorn v. Reorganized School Dist. No. 8, 364 Mo. 121, 260 S.W. 2d 573; Holmes v. Simon, Mo., 287 S.W. 2d 877; Metropolitan Properties Co. v. Rideout, 346 Mo. 787, 142 S.W. 2d 1055; Majors v. Malone, 339 Mo. 1118, 100 S.W. 2d 300; Scott v. Missouri Pacific RR Co., 333 Mo. 374, 62 S.W. 2d 834; Gelhot v. Stein, Mo., 174 S.W. 2d 174; Aulgur v. Strodtman, 329 Mo. 738, 46 S. W. 2d 172. Here, there was a comparatively long record; no reasons were given of record by the trial court when it made the questioned ruling: Counsel has, indeed, added little to this point in his argument, relying principally therein upon plaintiff's testimony that defendant Beary said he received $500. We do not take issue with plaintiff's counsel on his assertion that controverted fact issues resting on oral testimony are for the jury; we merely say here that under our rules no point of error has been sufficiently preserved on the direction of a verdict in favor of the two defendants in question.

Finding no reversible error in any matters properly preserved for review here, the judgment is affirmed.

*Storckman*, J., and *Broaddus*, Special Judge, concur; *Leedy*, J., not sitting.