STATE of Missouri ex rel. J. R. CLAGETT, Special Prosecuting Attorney of Jackson County, Missouri, Petitioner,

v.

Honorable John R. JAMES, Judge of Division No. 12 of the Sixteenth Judicial Circuit of Missouri, Respondent (two cases).

Nos. 47315, 47316.

Supreme Court of Missouri,

En Banc.

July 13, 1959.

Rehearing Denied Sept. 14, 1959.

as defendant), to inspect and copy the minutes of the Grand Jury of Jackson County which found two indictments against him. Separate writs in each case have been consolidated.

Defendant, an Assistant Prosecuting Attorney of Jackson County, was indicted on a charge of soliciting a bribe of $2,500 for the purpose of secreting information concerning an alleged abortion and preventing any investigation or prosecution therefor; and was also indicted on a charge of perjury in testifying before the Grand Jury concerning the solicitation of the $2,500. In each case, defendant filed a motion for an order granting inspection of the minutes of the Grand Jury, stating the names of the witnesses endorsed on the indictments and saying that the inspection requested may obviate the necessity of taking depositions of these same witnesses. In each motion it was also alleged:

"2. Defendant has reason to believe and alleges that unauthorized persons were unlawfully permitted to be present by the Grand Jury while said witnesses were testifying and when the Grand Jurors expressed their opinions with respect to the inquiry by said Jury concerning this defendant and the alleged offense.

"3. Defendant has reason to believe and alleges that the evidence on which the Grand Jury returned the indictment against him herein was insufficient upon which to base such indictment and was illegal.

"4. Defendant desires, and is entitled, to inspect the minutes of the Grand Jury with respect to the testimony given by all of the above witnesses and the proceedings occurring during their examinations, in order to lay the basis for his contemplated motion to dismiss the indictment upon the ground that the evidence before the Grand jury on which it was based was insufficient or illegal."

J. R. Clagett, Sp. Pros. Atty. of Jackson County, Kansas City, Fred L. Howard, Asst. Atty. Gen., Jefferson City, for petitioner.

Arthur C. Popham, Kansas City, Walter A. Raymond, Kansas City, for respondent.

HYDE, Judge.

Prohibition to prevent the enforcement of orders of respondent authorizing Earl H. Schrader, Jr. (hereinafter referred to

The order in each case stated: "It is hereby ordered that said minutes insofar as they relate to the testimony of * * * (names of witnesses stated) * * * and the defendant, and all proceedings which transpired during the course of their presence in the Grand Jury Room, or in connection with their testimony before the grand jury, be exhibited to defendant and his counsel, and that they be permitted to copy the same if they so desire." The parties agree that it was intended by these motions and orders that inspection be made of both the reporter's transcript of the evidence (Secs. 56.190 and 540.105) and clerk's minutes. (Sec. 540.100, statutory references are to RSMo and V.A.M.S. unless otherwise noted.)

Relator contends these orders violate the secrecy imposed by law on grand jury proceedings and call for production and inspection of matters not admissible in evidence; and therefore claims they exceed the jurisdiction of respondent. It should be noted that there is a difference between the secrecy requirements for witnesses testifying before the grand jury and those for grand jurors. Mannon v. Frick, 365 Mo. 1203, 295 S.W.2d 158, 163; Wigmore on Evidence, Secs. 2362–2363; 4 Wharton's Criminal Law and Procedure 495, Sec. 1721; 24 Am.Jur. 867, Secs. 49–50. The oath of a witness (Sec. 540.110) is as follows: "You do further solemnly swear, or affirm, that you will not after your examination here, directly or indirectly, divulge or make known to any person or persons the fact that this grand jury has or has had under consideration the matters concerning which you shall be examined, or any other fact or thing which may come to your knowledge while before this body, or concerning which you shall here testify, unless lawfully required to testify in relation thereto." Sec. 540.120 makes a violation of this oath a misdemeanor. There is, of course, good reason for imposing this secrecy upon witnesses at all times concerning all matters upon which no action is taken by the grand

jury (see 4 Wharton's Criminal Law and Procedure 489, Sec. 1719; 24 Am.Jur. 865, Sec. 47) and also concerning cases, in which there are indictments, prior to the arrest of the defendant. See annotation, 127 A.L.R. 283. However, "when an indictment is found by the grand jury, the names of all material witnesses must be endorsed upon the indictment" (Sec. 545.070). Therefore, when the indictment is made public (Secs. 545.080, 545.090), that matter concerning which the witness was examined is made known as well as all witnesses knowing about it. Thereafter, these witnesses may be "lawfully required to testify in relation thereto."

This was settled in Ex parte Welborn, 237 Mo. 297, 141 S.W. 31, 34, in which we said:

"It is earnestly insisted that considerations of public policy forbid the taking of the deposition of a witness who has appeared before the grand jury, and whose name is indorsed upon the indictment. Counsel invoke the old common-law rule in support of their position.

"One of the announced purposes of the common law in cloaking with secrecy the proceedings of the grand jury was the prevention of the subornation of perjury to meet the Crown's evidence, and this is strongly urged upon our consideration. That was a part of a system which denied the defendant counsel, kept him in close confinement until the hour of trial, refused him the right to call witnesses, sent juries to jail for returning verdicts of acquittal, and which, in short, was devised to convict the accused rather than to try the truth of the charge against him. In many respects, including the feature now pressed upon our attention, the rule in England has been changed by statutes (6 & 7 Will. 4 c. 114, § 4; 11 & 12 Vic. c. 42; 30 & 31 Vic. c. 35) under which a criminal

trial bears greater resemblance to a legal proceeding. * * *

"It is urged that since petitioner testified before the grand jury he cannot give his deposition without violating the oath he took as a witness before that body. The oath administered to witnesses before grand juries (section 5070, R.S.1909) binds them, among other things, not to disclose any fact concerning which they 'shall here testify, unless lawfully required to testify in relation thereto.' It is obvious that if there is no other legal obstacle save the clause of the oath quoted, it does not prohibit the taking of petitioner's deposition, provided his being compelled to give his deposition is equivalent to his being 'required to testify.' * * * These authorities and the ordinary and accepted meaning of the word 'testify' convince us that the oath taken before the grand jury constitutes no obstacle to the taking of petitioner's deposition."

It was pointed out in the Welborn case that our statutes require disclosure of the State's witnesses in a criminal case by requiring them to be endorsed on indictments and informations and afford accused the opportunity to find out their testimony at a preliminary hearing or by deposition, "upon the theory that truth has nothing to fear from light." (As to preliminary hearings see Secs. 544.270, 544.280.) It should also be noted that the requirement of endorsement of witnesses on the indictment was enacted in 1879 (see Sec. 1802, R.S. 1879) and that the disqualification of a person on trial in a criminal case to testify in his own behalf was not removed until 1877. (Laws 1877, p. 356; see also R.S. 1855, p. 1191, Chap. 127, Sec. 16, also p. 1577, Chap. 168, Sec. 6.) Thus we retained some of the common law system of criminal procedure, described in Ex parte Welborn, during the first half century of statehood and this may explain the strictness of our early decisions. Orfield, Criminal Procedure from Arrest to Appeal, pp. 349–350, 459–460. A more recent development is the enactment of provisions authorizing a stenographer or the official reporter of the circuit court to take down and transcribe evidence given before the grand jury. Secs. 56.190, 56.560, 540.105. This removes the objection noted in State v. Thomas, 99 Mo. 235, 262, 12 S.W. 643, 651, as to minutes "taken down by persons wholly inexperienced in reducing the language of others to writing," disclosure of which "would lead to the grossest injustice to witnesses." Although the reporter's oath required by Sec. 540.105 does not contain the qualification as to being lawfully required to testify, Sec. 56.190 applicable to Class One Counties (Jackson County is in that class) does provide for an oath, before taking down testimony before the grand jury, that the stenographer "shall not divulge any testimony which he or she may have heard there, except to the prosecuting attorney or when lawfully required to do so by a court of record having jurisdiction in said matter." Sec. 56.560 applicable to the City of St. Louis contains similar language. Thus the same requirements as to witnesses, considered in Ex parte Welborn, supra, also apply to stenographers. These provisions indicate that other uses of the stenographer's transcript of the grand jury witnesses' testimony are contemplated than the exclusive use thereof by the prosecuting attorney; and these provisions certainly weaken the authority of the earlier cases insofar as they indicate there should be no disclosure of any such testimony after the indictment and the names of the witnesses have been made public.

■ We have indicated in State v. Pierson, 343 Mo. 841, 123 S.W.2d 149, 153, and State v. Brinkley, 354 Mo. 337, 189 S. W.2d 314, 335, that the court had discretion to permit the inspection of minutes of witnesses' testimony before a grand jury, apparently meaning the stenographer's transcript since these were both St. Louis cases and St. Louis has had such statutory authority for taking grand jury witnesses' testimony since 1905 (Laws 1905, p. 51). Likewise, in State ex inf. Dalton v. Moody,

Mo., 325 S.W.2d 21, we held that a grand jury transcript properly could be used in a quo warranto case on the issue of misconduct of the prosecuting attorney. In at least one state a person indicted may obtain a transcript of the testimony of witnesses before the grand jury as a matter of right. See Kentucky statute quoted in Turk v. Martin, 232 Ky. 479, 23 S.W.2d 937, 939; see also 23 C.J.S. Criminal Law § 956, p. 265; Rule 6(e), Federal Rules of Criminal Procedure, 18 U.S.C.A.; Pittsburgh Plate Glass Co. v. United States, decided June 22, 1959, 79 S.Ct. 1237, and cases therein cited. Respondent stated as the reason for his orders: "I believe a denial of defendant's motions would even be an abuse of the Court's discretion. This is said particularly in view of the fact that one of the alleged offenses was committed before the Grand Jury and that the other offense charged is closely allied thereto." However, the question for our decision is not whether an order denying any inspection would have been an abuse of discretion or whether the order made was an abuse of discretion; it is instead a question of respondent's jurisdiction to make the order he made. We recognize that there are important reasons for grand jury secrecy and that disclosure should be made only when, and to the extent, the ends of justice really require it; and as we hereinafter hold any parts of a transcript or minutes which show statements, opinions, actions or deliberations of any of the grand jurors must not be disclosed; neither should testimony as to matters not admissible in evidence. Nevertheless we cannot hold that respondent has no discretion under any circumstances to allow inspection by the defendant of any part of the stenographer's transcript of the testimony before the grand jury of the defendant himself and the witnesses endorsed on the indictments against him. Therefore we must and do hold that respondent has jurisdiction to make orders for inspection of the transcript of the testimony of these witnesses and defendant or such parts thereof as he deems proper to meet the ends of justice.

However, we think the orders were too broad and in excess of jurisdiction in authorizing inspection as to *"all proceedings"* which transpired during the course of their presence (defendant and the witnesses) in the grand jury room, or in connection with their testimony before the grand jury." In State v. Grady, 84 Mo. 220, 224, this court reaffirmed the ruling in State v. Baker, 20 Mo. 338, 339, that it is "a general principle that no juror, grand or petit, can be heard to prove his own misconduct or that of his fellows." See also State v. Shawley, 334 Mo. 352, 67 S.W.2d 74, 82, and other Missouri cases so holding there cited; Orfield, Criminal Procedure from Arrest to Appeal, p. 167. This principle that no juror, grand or petit, can testify to prove any fact to impeach their verdict or finding and our other provisions for secrecy prevent disclosure of the minutes made of *"all proceedings"* during the presence of the witnesses in the grand jury room and especially of *all proceedings* "in connection with their testimony before the grand jury." This goes far beyond the actual testimony of the witnesses and could include actions, opinions and even deliberations of the grand jury "in connection with their testimony before the grand jury." Moreover, it could include examinations of persons whose names were not endorsed on the indictments against defendant and who would not be used as witnesses against him. Furthermore, even discovery in civil cases is limited to matters and facts that would be admissible in evidence. State ex rel. Williams v. Buzard, 354 Mo. 719, 190 S.W.2d 907; State ex rel. Thompson v. Harris, 355 Mo. 176, 195 S.W.2d 645, 166 A.L.R. 1425; State ex rel. Cummings v. Witthaus, 358 Mo. 1088, 219 S.W.2d 383, 8 A.L.R.2d 1124; State ex rel. Bostelmann v. Aronson, 361 Mo. 535, 235 S.W.2d 384; State ex rel. Terminal R. R. Ass'n of St. Louis v. Flynn, 363 Mo. 1065, 257 S.W.2d 69. This part of respondent's order is certainly as broad as the one condemned in the Witthaus case (219 S.W.2d loc. cit. 390) as "too broad and all inclusive."

■ The grand jurors' oath is that "the counsel of your state, your fellows and your own, you shall truly keep secret." Sec. 540.080. This obligation is emphasized by Sec. 540.310 providing that no grand juror "shall be * * * allowed to testify or declare in what manner he or any other member of the grand jury voted on any question before them, or what opinions were expressed by any juror in relation to any such question." Sec. 540.320 provides: "No grand juror shall disclose any evidence given before the grand jury, nor the name of any witness who appeared before them, except when lawfully required to testify as a witness in relation thereto." However, this exception is made more specific by Sec. 540.300, which states the matters concerning which grand jurors may be required to testify; and it has been said that "the extent to which those common-law rules of exclusion has been relaxed, is to be measured by the terms of the statute." State v. Thomas, 99 Mo. 235, 260, 12 S.W. 643, 651; State v. McDonald, 342 Mo. 998, 119 S.W.2d 286, 288. Although as indicated we think this rule has been relaxed at least as to pertinent parts of the evidence of witnesses endorsed on indictments, taken down by an authorized stenographer, our conclusion is that it is the intent of our statutes to keep secret the proceedings of the grand jury concerning which the grand jurors are specifically prohibited from testifying and that transcripts, notes and minutes cannot be used to disclose such matters.

■ Defendant refers to grounds 2, 3 and 4 of his motion hereinabove set out and says they were intended to lay a foundation for his motion to dismiss the indictments on the grounds that the evidence on which they were based was insufficient or illegal and that unauthorized persons were present in the grand jury room during its proceedings and deliberations. In State v. Grady, 84 Mo. 220, this court held that an indictment should be quashed when it was shown by testimony of the prosecuting attorney (not by members of the grand jury or its minutes) that it was found without having any evidence before the grand jury. However, it was further said if evidence was heard the grand jurors were the judges of its sufficiency because otherwise "it would result that the court would become the tribunal to indict as well as the tribunal to try the case." See also State v. Shawley, supra, 67 S.W.2d loc. cit. 82. Defendant cites State v. Salmon, 216 Mo. 466, 115 S.W. 1106, but in that case the presence of the person complained of as unauthorized was admitted by the state. Some of our cases have referred to New York decisions which are based on statutes permitting inspection of grand jury minutes for the purpose of enabling the accused to move to dismiss or quash the indictment. Sec. 313, Code of Criminal Procedure, McKinney's Consolidated Laws of New York, Annotated, and also Sec. 952–t, thereof; for New York cases concerning this procedure see 23 C.J.S. Criminal Law § 956, pp. 266–267. The New York statutes authorize inspection when a motion to set aside is made on grounds specified in Sec. 313 with sufficient showing as to these grounds. Our statutes provide no such procedure and the policy of this state is against any tribunal except the grand jury deciding the sufficiency of the evidence to justify an indictment if there is evidence before it. However, some testimony of witnesses · upon which the Grand Jury acted has been made available to defendant by the part of the court's order, which we have held to be within its discretion to make, and this will show whether there was any legal evidence before it. While evidence of the presence of unauthorized persons by persons other than grand jurors is admissible, this claim is not a valid ground for inspection of minutes made by the clerk of the Grand Jury, for the reasons hereinabove stated. Therefore, we hold that the part of the order for inspection of any transcripts or minutes beyond actual testimony of defendant and the witnesses endorsed on the indictments involved was in excess of the jurisdiction of respondent.

Nothing we have said herein is intended to indicate our views as to whether any part of the order of respondent herein, which we have held he had jurisdiction to make, was or was not a proper exercise of discretion. Our rule is discharged as to the part of respondent's order for exhibition and inspection of the parts of the transcript containing the testimony of defendant and the witnesses endorsed on the indictments against him only; and is made absolute as to exhibition and inspection of all other minutes or transcripts or parts of transcripts of the Grand Jury's proceedings.

DALTON, J., concurs in separate opinion filed.

HOLLINGSWORTH, C. J., and LEEDY, J., concur and concur in separate concurring opinion of DALTON, J.

WESTHUES, J., dissents.

EAGER, J., dissents in dissenting opinion filed.

STORCKMAN, J., dissents and concurs in dissenting opinion of EAGER, J.

EAGER, Judge (dissenting).

I find myself unable to concur in the breadth and scope of this relinquishment of the secrecy of grand jury proceedings, even though this case is one in prohibition, where our review is limited. We may concede that there has been some erosion of the rigid, common-law rule of grand jury secrecy, and that some discretion now rests in the appropriate court. 23 C.J.S. Criminal Law § 956, and cases cited. But the extent to which this invasion of secrecy is permitted varies widely from court to court and from state to state; it by no means follows that a defendant in the ordinary criminal case is entitled to an inspection of the minutes or to a transcript of the testimony of the prosecution witnesses. Even in New York where the right is permitted

to a greater or less degree under a statute relating to the quashing of indictments, it is held that the power should be exercised sparingly. People v. McCann, 166 Misc. 269, 2 N.Y.S.2d 216.

Our statutes have been reviewed in the principal opinion. The discretion which the trial court has may be said to arise from our statutory provisions. State v. Thomas, 99 Mo. 235, 260–262, 12 S.W. 643. The purport of our statutes is that neither the witnesses nor the reporter shall divulge the testimony given before the grand jury *unless lawfully required to testify thereto*. Obviously, the release of the transcript is a divulgence of the testimony, to a far greater extent than the witnesses could do from memory. The instances in which grand jurymen may testify are fixed by statute. It remains, of course, for the courts to delineate the extent of any existing discretion. In State v. Pierson, 343 Mo. 841, 123 S.W.2d 149, the court recognized the existence of some degree of discretion, citing 16 C.J. 801, and New York cases, but it indicated, as I construe the opinion, the necessity of caution; the motion for inspection was there denied. In State v. Brinkley, 354 Mo. 337, 189 S.W.2d 314, 326, the defendant was indicted for perjury before the grand jury; the testimony of two grand jurors was the foundation of the State's case, apparently under our statute expressly authorizing such testimony "upon a complaint * * * for perjury." The court there said, 189 S.W.2d loc. cit. 335: "Their memories were somewhat faulty. The court had a discretion, State v. Pierson, 343 Mo. 841, 851(3), 123 S.W.2d 149, 152 (4). In its reasonable exercise the court might have permitted appellant to examine the grand jury notes covering his own testimony." Such an occasion has not yet arisen in the present case, there having been no trial and no such demonstrated necessity. In State v. McDonald, 342 Mo. 998, 119 S.W.2d 286, the court held, after reviewing the applicable statutes, that a motion for inspection of grand jury minutes for impeachment purposes was properly

overruled; it recognized, again, the existence of some discretion, to be exercised with caution and for specific purposes. The court also noted, among other stated reasons for the denial of the motion, that this was "a general fishing expedition into the minutes of the grand jury" (119 S.W.2d loc. cit. 289). In Mannon v. Frick, 365 Mo. 1203, 295 S.W.2d 158, 164, the question arose upon objections to the introduction of evidence at a civil trial; the only evidence which in any way concerned the grand jury proceedings consisted of: "* * * the identification of copies of two executed receipts, the originals of which had been used before the grand jury and had subsequently been lost, and the testimony of a witness that in his opinion the signature of plaintiff on one of these receipts was his genuine signature. * *" The court noted that the rule of common-law secrecy had been substantially modified, but the ruling on those facts can in nowise govern this case.

The courts of Missouri have never before, in my opinion, approached even close to such a release of the secrecy as here ensues. Missouri has legislated on the subject of grand juries since 1835 (R.S.1835, pp. 478–481), but the legislature has never seen fit to authorize such a disclosure as this, though it has enacted much more limited ones. The only possible legislative sanction for the present opinion is the ambiguous exception "unless lawfully required to testify * * *." To me, this is not a carte blanche authorization to the trial courts to discard all secrecy not expressly preserved by statute. The public generally has proceeded upon the usual lay assumption that grand jury proceedings are secret, as indicated in the statutory oaths themselves. The courts are not primarily policy-making bodies. In my opinion so broad a turn-around on an issue affecting the public interest should await legislative sanction.

One reason for the rule of secrecy is "to promote a complete freedom of disclosure" by grand jury witnesses. Mannon v. Frick, 365 Mo. 1203, 295 S.W.2d 158, 162. It is true that depositions of such witnesses may be taken (Ex parte Welborn, 237 Mo. 297, 141 S.W. 31), but from a practical standpoint this is much less offensive and embarrassing to the witnesses than it would be to lay open to the accused, and eventually to the public, in every bare word and detail, the testimony of each witness before the grand jury, where he presumably testified freely and without objections or benefit of counsel. In the very recent case of Pittsburgh Plate Glass Co. v. United States, 79 S.Ct. 1237, 1241, decided June 22, 1959, the court upheld the discretion of a trial court in rejecting the request of anti-trust defendants for a transcript of the grand jury testimony of the government's chief prosecuting witness; the request was made during the trial, after the direct examination of the witness, and after he disclosed that he had testified on the same subject matter before the grand jury. The court said, in part: "This conclusion, however, runs counter to 'a long established policy' of secrecy, United States v. Procter & Gamble, supra, 356 U.S. [677], at page 681, 78 S.Ct. [983], at page 986, [2 L.Ed.2d 1077], older than our Nation itself. The reasons therefore are manifold, id., 356 U.S. at page 682, 78 S.Ct. at page 986, and are compelling when viewed in the light of the history and *modus operandi* of the grand jury. Its establishment in the Constitution 'as the sole method for preferring charges in serious criminal cases' indeed 'shows the high place it [holds] as an instrument of justice.' Costello v. United States, 1956, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397. Ever since this action by the Fathers, the American grand jury, like that of England, 'has convened as a body of laymen, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor.' Ibid. Indeed, indictments may be returned on hearsay, or for that matter, even on the knowledge of the grand jurors themselves. Id., 350 U.S.

at pages 362, 363, 76 S.Ct. at pages 408, 409. To make public any part of its proceedings would inevitably detract from its efficacy. Grand jurors would not act with that independence required of accusatory and inquisitorial body. Moreover, not only would the participation of the jurors be curtailed, but testimony would be parsimonious if each witness knew that his testimony would soon be in the hands of the accused." The court held that disclosure may be made when "a particularized need" is shown which outweighs the policy of secrecy. This opinion is especially significant in view of the supposedly liberal practice of the Federal Courts in this regard, based on Rule 6(e) of the Federal Rules of Criminal Procedure. And see, also, United States v. Procter & Gamble, 1958, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077. When the public generally comes to know of the presently announced rule of disclosure, that knowledge will, in my opinion, tend to affect adversely (rightfully or wrongfully) the freedom with which witnesses testify before a grand jury. It is my view that in the ordinary criminal case it is sufficient that the law furnishes to an accused the names of the State's witnesses (§ 545.070), and grants to him the full right to take depositions, certainly in the absence of a more compelling and "particularized" necessity than is shown here.

It has been authoritatively stated that the right to inspect the minutes may only be granted where it is sought in order to enable an accused to move to dismiss the indictment. 23 C.J.S. Criminal Law § 956, pp. 266–267; In re Martin, 170 Misc. 919, 11 N.Y.S.2d 607, 609; People v. Macner, 171 Misc. 720, 13 N.Y.S.2d 451, 454. And, similarly, that it is not to be granted to enable a defendant to prepare for trial, nor for impeachment purposes. 23 C.J.S. Criminal Law § 956, p. 267. It would seem that such permission is ordinarily not to be granted for mere discovery, although the contrary may be indicated in United States v. Procter & Gamble, supra. Certainly, the mere fact that depositions might there-

by be obviated is a wholly insufficient reason, actually sounding more like a mere "excuse" to probe. Our statute on the production of documents for discovery purposes (§ 510.030) is part of our Code of Civil Procedure; Criminal Rule 25.19, 42 V.A.M.S., dealing with subpoenas duces tecum and the production and inspection of books and papers has been held not to be intended as a rule of discovery. State ex rel. Phelps v. McQueen, Mo., Banc, 296 S.W.2d 85, 89. The respondent has filed here with his suggestions the deposition of the acting foreman of the grand jury purporting to show illegal and extraneous activities on his part, and the defendant claims that unauthorized persons were present before the grand jury. These things, if true, can be shown by methods other than an inspection of the minutes (State v. Grady, 84 Mo. 220, 224), as indeed the defendant has already recognized by the taking of one deposition. As concerns the sufficiency of the evidence before the grand jury (its insufficiency being also advanced), our courts have declined to permit a review by the courts. State v. Grady, 84 Mo. 220, 224; State v. Shawley, 334 Mo. 352, 67 S.W.2d 74, 82. The only question is "whether they had before them any evidence at all." Grady, Shawley, supra. In this case no one could conclude that no evidence was presented, and there is no possibility of illegality on that ground. To permit a review here on the sufficiency of the evidence, would, as stated in both of the cases last cited, make "the court * * * the tribunal to indict as well as the tribunal to try the case." See, also, United States v. Herzig, D.C., 26 F.2d 487, where the court said, loc. cit. 488: "I think it is well settled in this circuit that courts will not sit in review of proceedings before the grand jury, to determine whether or not the grand jury acted on competent evidence. Kastel v. United States, 2 Cir., 23 F.2d 156." The promiscuous inspections of grand jury transcripts, which I think will result from this ruling, may well necessitate a pre-trial hearing in substantially every case prose-

cuted by indictment, and the court will there be required at least to review the transcript of the grand jury evidence; if it does not presume to determine the sufficiency of the evidence, it will probably be asked to rule whether there was any evidence on the essential elements of the State's case. This is not an end greatly to be desired.

It may also be noted that the principal opinion suggests no guides or standards for the trial court in the exercise of its discretion. Perhaps it may not do so in prohibition, and perhaps no precise standards can be fixed; we may ask, however, in order to pose the problem: is the matter to be ruled on the fact that the defendant is poor and cannot afford depositions? Shall it depend upon the number of witnesses heard, or upon the nature, seriousness, or complexity of the criminal charge, or upon the fact that defendant himself did or did not testify before the grand jury? Shall transcripts be furnished in every case where the accused merely alleges some illegal procedure in the grand jury process? We may rely, theoretically at least, upon the exercise of a sound discretion, but it seems to me that the ruling here may well be taken as a mandate that the trial courts should grant inspections in substantially all criminal cases prosecuted by indictments. If so, the grand jury function will be irreparably impaired, and perhaps should be abolished, in so far as it is an instrument for the making of criminal accusations. Some seem to regard it now as virtually useless. Blake v. State, 54 Okl.Cr. 62, 14 P.2d 240.

If a literal stenographic transcript of the testimony of a defendant and of the witnesses endorsed on the indictment is furnished to the defendant it is most likely, and indeed almost certain, that it will contain colloquies, interrogations and remarks by grand jury members and expressions of their opinions, any and all of which would violate, directly or indirectly, the prohibitions of § 540.310. Some measure of prevention might be attained if the trial judge should completely "censor" such a transcript. The remark of Mr. Justice Brennan, dissenting in Pittsburgh Plate Glass Co. v. United States, 79 S.Ct. loc. cit. 1245, supra, that "the names of the grand jurors asking the questions can be excised," does not impress me as an effective cure. Grand jury proceedings are often conducted somewhat loosely, according to judicial standards, and not under the strict evidentiary procedure of trials; thus, it may well prove impossible in many instances to furnish a complete transcript of the required testimony without including matters which are thus forbidden. At best, the censorship would impose an enormous burden on the trial courts. The principal opinion seems to recognize that nothing should be furnished which would constitute "testimony not admissible in evidence." The elimination of that alone would often necessitate a sort of ex parte "pre-trial," but not a "hearing," for no one would be heard.

Then, too, it appears that the censoring of the transcript, or excising of certain portions, would involve an exercise of discretion by the trial court which the defendant might be entitled to have reviewed on appeal after conviction. This leads to the question: could the defendant properly present such a point to the appellate court if he did not have access to the entire transcript? He would have the burden of demonstrating error. On the other hand the Supreme Court could not arbitrarily deny a review of the trial court's discretion by rule or otherwise, and thus make the action of the trial court conclusive, since this would be a limitation on the right of appeal, a thing prohibited by the constitutional grant of rule-making power. See Art. V, Sec. 5, V.A.M.S.Const. I do not think we should take this step unless we are prepared to go all the way.

We need not, and probably may not, say here just where the line should be drawn in releasing or not releasing grand jury minutes and transcripts. The ultimate question

always is whether the ends of justice will be furthered by the requested disclosure. This involves not only the rights of the accused, but the rights and interest of the public in the administration of the criminal laws. These considerations must be balanced against each other. I am convinced that there is no showing here of such an impelling and necessitous right in this defendant as to justify the resulting jeopardy to the public interest, or even such as reaches the point where the court may exercise its discretion. A contrary situation may be seen in State ex inf. Dalton v. Moody, Mo., 325 S.W.2d 21, decided here on June 8, 1959, where the grand jury secrecy was relinquished in a quo warranto proceeding for the ouster of a prosecuting attorney; there, the very charge was of misconduct in connection with grand jury proceedings and indictments. There was no other method of getting at the truth in a matter of public interest. See, also, generally The Matter of Attorney-General, 160 Misc. 533, 291 N.Y.S. 5; In re Martin, 170 Misc. 919, 11 N.Y.S.2d 607. A limited disclosure may sometimes be proper for the protection of private rights. Mannon v. Frick, 365 Mo. 1203, 295 S.W.2d 158. And there may be instances, as in indictments for perjury before a grand jury, where for a full understanding of the background of the charge and to protect fundamental rights of an accused he should be furnished a transcript of his own testimony. State v. Brinkley, 354 Mo. 337, 189 S.W.2d 314, 335; United States v. Remington, 2 Cir., 191 F.2d 246, 250, 251. Even there the danger of releasing forbidden opinions, expressions and conclusions may be great. In these present cases the defendant has made no showing of the necessity of a transcript of his own testimony as distinguished from that of the witnesses generally. The occasion for any requested inspection should be compelling and specific and the showing must be sound; at the least, it should consist of something more than the desire to "fish" in the pool of grand jury evidence in the hope of finding impeaching material to be used in subsequent cross-examination.

In my view there has been no such showing of "particularized need" or of any compelling necessity for the protection of fundamental rights, as to reach the place where the court might exercise a discretion in the premises. I would make our rule in prohibition absolute.

I respectfully dissent.

DALTON, Judge (concurring).

I concur in the opinion of HYDE, J., although I am in full agreement with some of the views expressed in the dissenting opinion of EAGER, J.

Even though the order of the trial court (to the extent permitted to stand by the majority opinion) may have been inadvertently entered without an adequate showing of record to fully sustain it, nevertheless I believe the trial court did not exceed its jurisdiction or act without jurisdiction in entering the portion of the order now permitted to stand.

Since the entire former order of the trial court will no doubt be set aside in order to enter a new order in conformity to the majority opinion of this court, the trial court in view of the views expressed by the members of this court may yet require a more adequate showing of necessity or other valid grounds for the entering of such a new order as may be within the trial court's jurisdiction.

Further, in this connection it should be said that, while an abuse of discretion in entering an improper order against a defendant in a criminal case may be remedied on appeal, an abuse of discretion against the state is usually without a remedy.

On Motion for Rehearing

PER CURIAM.

In its motion for rehearing and suggestions in support relator assumes we

held that defendant *was entitled* to a discovery of the evidence before the grand jury on the showing made by him. We did not so hold nor did we hold that respondent did not abuse his discretion in permitting inspection of the entire transcript of the testimony of the witnesses endorsed on the indictments against him. We decided only that respondent had jurisdiction to exercise his discretion and decide whether to make that part of the order and therefore we could not prevent him from doing so by prohibition. We did prohibit enforcement of the part of the order allowing inspection of anything more than the testimony of witnesses, as being beyond respondent's jurisdiction; and it is our view that a new order should be made limiting inspection to the testimony of witnesses only and to such parts of the transcript of their testimony as would be admissible in evidence and be necessary to meet the ends of justice under all the circumstances shown. Nevertheless, we cannot control respondent's discretion, nor dictate how he may exercise it, in a proceeding in prohibition. However, we do agree with relator that this matter should be regulated by a rule promulgated under our rule making power (Sec. 5, Art. V, Const. V.A.M.S.) to provide guides and standards and we have concurrently herewith adopted Rule 24.24, 42 V.A.M.S., for this purpose.

■ Relator's main contention on rehearing is that we have failed to consider relator's point IA, namely, that there is no provision either in the common law, statutes or Supreme Court rules authorizing the court's order and that respondent was therefore without jurisdiction to make it. We did consider it and held there was no authority for such a broad order as respondent made and prohibited its enforcement but held that he had discretion to make certain parts of his order. Relator, however, contends that, even as to these parts, we have allowed an order for inspection for the purpose of discovery of evidence and that this is in conflict with our ruling in State ex rel. Phelps v. McQueen, Mo.Supp., 296 S.W.2d 85, 89. In

the McQueen case, we were construing our Rule 25.19 and held this was not a rule of discovery but that its purpose was "to enforce production of documents or objects at the trial that contain evidence material and relevant to the issues and to require prior production and inspection of such records or objects if prior production and inspection will expedite the trial"; and that the trial court was without jurisdiction "to make an order to produce for inspection in the absence of good cause shown, which should appear from the motion, the evidence or admissions of the parties that such books, papers, records and documents contain evidence that is relevant and material to the issues." However, the basis of our ruling therein was that the order and subpoena therein, which was to produce a great mass of private records, were clearly for the purpose of discovery, showed the immateriality of much of it, and were "illegal, oppressive, violative of fundamental rights of those against whom they are directed and, under the circumstances shown herein, constitute an excessive exercise of respondent's jurisdiction." Thus the order in that case violated fundamental private rights, which is not true in this case, and that distinguishes the McQueen case from this one. The ruling in the McQueen case was in accord with our ruling in State v. Hinojosa, Mo. Sup., 242 S.W.2d 1, 6, that: "The court would have had no authority to order the production of irrelevant and immaterial matter not admissible in evidence, and this is true even though such matters might aid in the preparation for trial." In accordance with these cases, we hold that inspection of a grand jury transcript should not be permitted for purposes of discovery or as a substitute for taking depositions of witnesses endorsed on an indictment but only when and to the extent that is shown to be necessary to meet the ends of justice.

■ However, as held in the McQueen case (296 S.W.2d loc. cit. 89), relator had the burden to show that respondent exceeded his jurisdiction in this respect. In this

case, defendant was indicted for perjury committed before the grand jury and perjury is one of the matters about which Sec. 540.300 provides even grand jurors may be required to testify. The other indictment was for soliciting a bribe for preventing investigation of an alleged crime which the grand jury was investigating and the perjury was alleged to be in defendant's testimony before the grand jury in connection with its investigation of the bribery charge. The record before us does not indicate the circumstances under which defendant testified before the grand jury, or why he did so, when he could not have been compelled to do so. These indictments and circumstances were before respondent and were the basis of his order as shown by his statement of his reasons. Defendant's own testimony before the grand jury certainly was not irrelevant and immaterial matter because it was the very basis of the charge against him. It does not specifically appear what the testimony was of the five witnesses endorsed on this indictment, or what showing was made about it to the trial court, but all of them were also witnesses endorsed on the bribery indictment. It does appear from the deposition of one of the grand jurors that one of these witnesses was the man from whom it was claimed defendant had solicited the bribe charged. This case is similar to State ex inf. Dalton v. Moody, Mo., 325 S.W.2d 21, in that it also concerns misconduct of a prosecuting attorney (in this case an assistant prosecuting attorney) and that this misconduct charged was in a matter the grand jury was investigating. Under the circumstances, we cannot hold that respondent had no jurisdiction to permit inspection of any part of the grand jury transcript. Nevertheless, his order may be too broad not only in the respects held in the opinion and prohibited but also in allowing inspection of all of the testimony of all of the witnesses in both cases. Our ruling did not mean that anyone indicted is entitled to see all the testimony of all witnesses before the grand jury, even if it is all material and relevant,

and it might well be an abuse of discretion to permit it.

Our view is that a new order should be made to comply with our ruling to carefully limit inspection to such parts of the transcript of the testimony as would be relevant and material at the trial; and that the suggestion in the separate concurring opinion of Dalton, J., should be followed for respondent to review the exercise of discretion involved so as to require disclosure only of such parts of the transcript of the testimony as to which inspection may be deemed essential to meet the ends of justice.

The motion for rehearing is overruled.

All concur except EAGER and STORCKMAN, JJ., who dissent.